418 So.2d 798 (1982)
Jack ETHRIDGE
v.
STATE of Mississippi.
No. 53329.
Supreme Court of Mississippi.
August 11, 1982.
Rehearing Denied September 8, 1982.
Nora J. Hall, Roy O. Parker & Associates, Tupelo, for appellant.
Bill Allain, Atty. Gen. by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, BROOM and ROY NOBLE LEE, JJ.
ROY NOBLE LEE, Justice, for the Court:
Jack Ethridge was convicted in the Circuit Court of Lee County, Honorable Thomas *799 J. Gardner, III, presiding, on a charge of murder and was sentenced to life imprisonment. He has appealed and assigns three (3) errors in the trial below.

I.
Did the lower court err in admitting into evidence the following items on the grounds that they were irrelevant and prejudicial to the jury: (a) two .38-caliber pistols, (b) bloodstained clothing belonging to the witness Wayne Dillard, (c) a section of paneling with an indentation allegedly caused by a bullet?
Evidence for the State reflects that on July 29, 1980, about 2:00 a.m., the Sheriff's Office of Lee County received a complaint that Mrs. Clytee Ethridge was missing. Mrs. Ethridge's daughter reported the information. At approximately 7:00 a.m., a sheriff's deputy went to the Ethridge home and an investigation was initiated by him and other officers. As a result of the investigation, the appellant, Jack Ethridge, husband of Mrs. Clytee Ethridge, and Wayne Dillard, were taken to the sheriff's office and informed of their constitutional rights. Appellant executed an agreement permitting search of the home, and Dillard gave a statement implicating appellant in the homicide of Mrs. Ethridge. He took them to a place where her body was found and also to other locations where items of evidence were recovered.
Dillard testified at the trial that he rented a house from appellant and previously had worked for him in a bulldozing and dragline operation. On Monday, July 28, 1980, he worked for the appellant, mowing his lawn and doing some bushhogging. After finishing, around 7:00 p.m., they sat talking with some friends and Dillard went home around 8:00 p.m. He had started to eat supper when appellant came to the house and told him to come with him. They went to appellant's home and appellant asked Dillard, if he was going to stay with him, whereupon, Dillard replied, "He guessed he would." Appellant then told Dillard that he thought Mrs. Ethridge was going to leave him, and he had killed her. They went into the back bedroom and found Mrs. Ethridge's body on the floor, wrapped it in a blanket, and carried the body out and placed it in appellant's truck.
Appellant and Dillard wiped up the blood with a white dress, which they later burned. They took the body about ten (10) miles from the Ethridge home, drove off Highway 41 about three-fourths (3/4) of a mile down a dirt road, and then left the body approximately fifty (50) yards off the road in the woods. The men tried to clean blood from the truck and put corn shucks in the pickup bed to conceal any bloodstains they missed. Dillard's pants were covered with blood. Before going into his house, he removed the pants and threw them in the woods. He arrived home at approximately 11:00 p.m. Appellant said that he would report Mrs. Ethridge as missing and that he would call his daughter and ask whether or not his wife had been there.
The following morning, Scruggs, a nephew of Ethridge, went to Dillard's home and told him that Mrs. Ethridge was missing and that he should go to the Ethridge home. When Dillard did not comply, Scruggs contacted Dillard again and told him that Ethridge was asking for him. Dillard then went to appellant's home where appellant told him to take the truck and clean it up, that there was blood on the back bumper and a shirt under the seat. Appellant gave Dillard money for gas, and he drove off in the truck for that purpose.
Ethridge testified and denied that he knew anything about the homicide. He admitted that he was with Dillard on the afternoon and night of the homicide, but said that someone must have hired Dillard to get him away from the house while the homicide was being committed. He testified that, after leaving Dillard on the night of the homicide, he went home, the television was on, and his wife was missing.
The State offered in evidence, and the lower court admitted, two .38-caliber pistols, the bloodstained clothing of Wayne Dillard, and a section of paneling with an indentation supposedly caused by a bullet. The indentation in the paneling was at a *800 point six and one-half (6 1/2) to seven (7) feet above the floor of the bedroom where Mrs. Ethridge was killed. Appellant contends that the admission of that physical evidence constitutes reversible error.
The pathologist testified that the cause of death was a bullet wound which entered the head of Mrs. Ethridge above the left ear and exited above the right ear, and that the wound was consistent with the size of a .38-caliber bullet; that he could not identify the exact caliber, but that the wound was caused by a handgun of mid-caliber size. The two .38-caliber pistols introduced in evidence were found in appellant's home, where Mrs. Ethridge was slain, and were identified as being his.
Appellant cites Herman v. State, 75 Miss. 340, 341, 22 So. 873 (1898) and Lanier v. State, 291 So.2d 695 (Miss. 1974) in support of his contention that all the physical evidence mentioned should not be admitted. However, those cases are distinguished from the case at bar on the facts. It was competent to show that the appellant owned a .38 pistol or pistols, since the evidence of the fatal wound indicated it was similar in size to a wound caused by that size bullet. The introduction of the pistols, under the facts of this case, was relevant to proof of the fatal wound and had probative value as to the connection of appellant with the homicide.
The bloodstained clothing, including pants worn by Wayne Dillard, corroborated the testimony of Dillard and had relevance to the crime itself. The section of paneling with an indentation in it, which the crime laboratory found to have traces of lead, and which was found in the bedroom in close proximity to the body, also had relevance and probative value bearing upon the commission of the crime.
We are of the opinion that there was no error in admitting the items into evidence.

II.
Did the lower court err in allowing the sheriff and his deputy to remain in the courtroom after the rule had been invoked?
The appellant concedes that sequestration of witnesses is a procedural matter and is within the sound discretion of the trial judge. Action of the court in permitting officers of the court, such as the sheriff and deputy, whose business and duty it was to secure the courtroom, is not an abuse of the court's discretion. See Pilcher v. State, 296 So.2d 682, cert. den. 420 U.S. 938, 95 S.Ct. 1149, 43 L.Ed.2d 415 (1974); Irving v. State, 361 So.2d 1360 (Miss. 1978); Fondren v. State, 253 Miss. 241, 175 So.2d 268 (1965); and Stokes v. State, 240 Miss. 453, 128 So.2d 341 (1961).
The court invoked the rule as to all officers except the sheriff and his chief deputy, who were performing duties in the courtroom. The testimony of those officers related only to the identification of a photograph of the body and blanket in which it was wrapped, and in establishing chain of custody of blood samples taken from the appellant and the witness Dillard. The chain of custody was stipulated to by attorneys for appellant and the prosecution.
There is no merit in this assignment.

III.
Did the lower court err in overruling defendant's motion for a mistrial during the testimony of witness Harold Ethridge, after this witness mentioned irrelevant and inflammatory matters?
The expert witness, Harold Ethridge, testified that he found pieces of tissue (meat and skin) in the kitchen of appellant's home. Appellant's counsel objected and moved for a mistrial and offered into evidence copies of reports from the Mississippi Crime Laboratory which did not mention the finding of any human tissue in appellant's home. Appellant contends that the testimony was irrelevant, inflammatory and prejudicial.
The expert testified that he had not scientifically analyzed the material, but he knew it was tissue. He could not state whether it was animal or human tissue. We are of the opinion that the admission of such testimony did not constitute reversible *801 error. Taylor v. State, 254 So.2d 728 (Miss. 1971); Ivey v. State, 206 Miss. 734, 40 So.2d 609 (1949).
The evidence in this case is overwhelming beyond reasonable doubt that the appellant committed this heinous homicide on his wife. He does not even contend on this appeal that the conviction was against the weight of the evidence. Without question, he received a fair trial. His unreasonable and contradicted denial of his implication in the crime was not believed by the jury, nor do we give credence to it.
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SUGG and WALKER, P. JJ., and BROOM, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.