525 So.2d 1312 (1988)
Tommie James DOUGLAS (Spates)
v.
STATE of Mississippi.
No. 57414.
Supreme Court of Mississippi.
April 27, 1988.
Rehearing Denied May 25, 1988.
*1313 William B. Jacob, Daniel P. Self, Jr., Meridian, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by John H. Emfinger, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and GRIFFIN, JJ.
DAN M. LEE, Presiding Justice, for the Court:
Tommie James Douglas (Spates) was charged with the murder of Lesia Little and was indicted by a grand jury in Noxubee County, Mississippi, on September 11, 1985, and was arraigned on that date in the Circuit Court of Noxubee County. The case went to trial in March of 1986 in the Circuit Court of Noxubee County where the jury returned a verdict of guilty and the Circuit Court imposed a life sentence. From this conviction and sentence Mr. Douglas appeals, assigning three errors. We discuss at length one assignment of error, but do not find it necessary to reach the other two. We affirm.

FACTS
In the early morning hours of July 7, 1985, Lesia Little was shot to death in her home in Shuqualak, Mississippi. There were two men in her home that evening, one of them her ex-live-in partner and father of her children, the defendant Tommie Douglas. The other was Eric Grady, her current boyfriend. Although Tommie Douglas was indicted for Lesia's murder, the factual issue at trial was which one of the two actually shot her. That factual question depended to a great extent upon the physical fact of whether Douglas broke the window pane while entering the house, thereby corroborating Grady's story, or whether the window pane was broken while the appellant and Grady were fighting, as testified to by appellant, thereby corroborating appellant's story that Grady shot Lesia. The appellant put on expert witness James Hall, who testified that Douglas could not have crawled through the broken window pane without being seriously cut. The Sheriff remained in the courtroom during all of this testimony and was then called in rebuttal. He stated that the window was raised, which would refute appellant's testimony and that of his expert. In this context M.R.E. 615 was called into play. The facts in more detail are as follows.
The state's key witness at trial was Grady, whose version of the events that night are as follows. He had known Lesia about eight months before she was killed and they had been dating for about four weeks before the incident. He was aware that Mr. Douglas used to live with her. On July 6, 1985, Mr. Grady travelled from Macon to Shuqualak to visit Lesia, arriving there about 4:00 p.m. At around 9:00 p.m. he left her with her friend, Brenda Naylor, *1314 and went back to Macon. Later that night he saw Lesia in Macon, at which time Lesia invited him to come back to her house. When he returned to her house at 1:00 or 1:30 a.m. on July 7, Brenda Naylor's car was parked in the road in front of Lesia's house and he parked in the carport. Ms. Naylor was not in the house, but Lesia and her two children were. No lights were on in the house. As he and Lesia sat on the couch in the living room talking, with the radio on, a car pulled up into the driveway. Lesia looked out the window and told Grady that it was Douglas, whereupon she turned off the radio, went to the bedroom and turned off the fan, and then went to the kitchen, while Grady remained on the couch in the living room. Someone knocked on the door twice; neither he nor Lesia said anything. This person then went to the window at the back of the house and called Lesia's name three times, after which he broke the window. Shortly, Douglas entered the living room and turned on the light, and faced Grady with a gun. Douglas told Grady to get up and they started walking toward the kitchen. At this point Lesia was sitting in a chair in the living room by the kitchen doorway. Grady took about four steps past the chair when he heard gunshots. He turned back and saw Douglas shoot again towards Lesia. Douglas turned towards Grady and said, "let's go." Grady had stepped out into the carport and stopped when Douglas said, "you want to die, too?" Grady asked, "Are you going to let me out?" Douglas moved his car from behind Grady's and allowed Grady to leave.
Mr. Grady went to the police station in Shuqualak, and could not find a law officer. He then drove to Macon where he made contact with Deputy Sheriff Billy Lee. Both of them went to Lesia's house and found that Mr. Douglas' car was gone. At this point in the trial, Mr. Grady gave a courtroom identification of Tommie Douglas as the person in Lesia's house that night. Mr. Grady testified that he had never seen Mr. Douglas before July 7.
Annie White, another of the state's witness, claims that she saw Tommie Douglas at a disco on the night of July 6, 1985. She and four of her friends got a ride home with Douglas. When they started dropping folks off at their houses, they drove by Lesia's house and saw a car parked in the carport. Upon seeing the car, Douglas supposedly said, "Da-ha," twice and then became very quiet. Ms. White was the last person Douglas dropped off, letting her out at her house at the foot of the hill. When she got up to her door, she heard a loud "bam." She did not know what it was, nor did she see the car, but she testified that the noise sounded like a car door or a trunk slamming. This took place at about 1:30 or 2:00 a.m. on July 7.
Mr. Douglas testified in his own defense, saying that he lived with Lesia from 1982 until May of 1985, and that they were the parents of two children, Tiki and Eric. He also testified that he had never owned a gun. He said Lesia invited him to dinner on July 4, 1985, and at the close of the evening asked him to come back to visit her on Saturday, July 6, at midnight. Douglas worked that Saturday, July 6, from 7:00 a.m. to 12:00 noon, after which he went to a Mr. Dancey's house to watch the VCR and stayed there until midnight. When he went to Lesia's house about 1:00 a.m., July 7, he saw a car in the carport, but thought it belonged to Lesia's girlfriend. He knocked on the door and called "Lesia" several times, but no one answered, so he opened the door (which he claimed was unlocked) and went in. He called again and walked through the house turning on lights, but still no one answered. He went down the hall and kept calling until he reached Lesia's bedroom, where he turned on the lights. At that point, Grady jumped out of bed, grabbed Douglas and threw him into the window, causing it to break. Then Grady grabbed for his pants, pulled a gun out of a pocket, and pursued Douglas who was running for the kitchen door. Lesia got in between them in the kitchen. As Douglas ran out of the door he heard two gunshots. He got into his car and left, never turning back. He went to his home in Scooba, remaining there all day Sunday. On Monday morning he called his boss, who advised him that Lesia was dead. Later *1315 that morning his father came by and questioned him about the incident, subsequently advising him to stay put. Later that Monday afternoon, he and his father went to Meridian and talked to his lawyer. On advice of counsel he turned himself in to the Sheriff of Noxubee County on Tuesday morning. He does not know how Lesia met her death because he did not actually see Grady shoot her.
The first rebuttal witness called by the state was Henry Little, Lesia's brother, who testified, inter alia, that he had seen Douglas at the disco on the night of July 6 and that he had seen Douglas with two weapons in October of 1984  a .357 magnum and a Colt semi-automatic .25. This particular testimony is significant in that the bullets retrieved from Lesia's body at the autopsy were from a .357 magnum. On cross-examination, Mr. Little stated that the district attorney related to him that Douglas testified that he was watching a VCR at Dancey's house on July 6, that Douglas testified that he never owned a gun, and that Douglas testified that he was not at the disco on Saturday night. At the close of Mr. Little's testimony, Douglas moved to exclude any rebuttal witnesses on the grounds that the district attorney had told them about Douglas' testimony in violation of M.R.E. 615, the sequestration rule. This motion was overruled.
The state then offered Jerry Hyde as a rebuttal witness who testified he saw Douglas at the disco on Saturday night and got a ride home with him. He testified that he lives on Lesia's street, and that when they drove by Lesia's house and saw Grady's car parked in the carport, Douglas said, "Da-ha." On cross-examination Mr. Hyde stated that he had talked to Annie White, the state's earlier witness, about her testimony. Again, the defendant moved to exclude this testimony because it was a violation of the sequestration rule. This motion was also overruled.
Deputy Sheriff Billy Lee took the stand on rebuttal and testified about the window. He claims that when he first went into Lesia's house early Sunday morning the bedroom window was raised. He then stated the district attorney first asked him if the window was up or down right before he testified in rebuttal. His earlier direct testimony made no mention of whether the window was up or down.
The rebuttal testimony of Sheriff Cecil Russell also centered on the window. Before he began to testify, the defendant raised an objection to his testifying because he had been sitting in the courtroom during all of the testimony. The defendant claimed this was a violation of the sequestration rule. The judge overruled the motion, reasoning that the sheriff is allowed to remain in the courtroom at all times, even under the sequestration rule. The sheriff then testified that he told the district attorney right before his testimony that the window was up when he went back to investigate the house at 10:00 o'clock on Sunday morning. He claimed that he took his pocket knife and stuck it in the wood frame of the window and pulled it down in order to see if there were any fingerprints or blood on the glass shards.
In the end, we interpret M.R.E. 615 in a way that will be the least disruptive to our prior courtroom procedures, but with an admonition that a fair trial and the ends of justice will be best served by the strict enforcement of the Rule.

Did the Trial Court Err in Allowing Witnesses to Testify in Violation of Rule 615 of the Rules of Evidence Concerning the Exclusion of Witnesses and Sequestration of Witnesses?
Under this assignment of error Mr. Douglas alleges that the trial court erred in allowing several of the state's rebuttal witnesses to testify because these witnesses were in violation of M.R.E. 615, the exclusion or sequestration of witnesses. Both parties invoked The Rule before the trial proceedings began. The Rule provides:
At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order on its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party who is not a natural *1316 person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.
No cases have yet been decided under M.R.E. 615.
The focus of Mr. Douglas' assignment of error is that Sheriff Russell should not have been allowed to testify in rebuttal because he had been present in the courtroom during the entire trial. The trial court overruled defendant's objection to his testimony by stating that the Sheriff is allowed to remain in the courtroom, even under The Rule. The Sheriff offered rebuttal testimony about a key issue in the trial  whether the broken window sash was up or down when he first investigated the crime scene. The Sheriff had not testified during the state's case-in-chief, nor had he offered this information to the District Attorney until after the defense witnesses had testified.
In pre-Rules cases this Court generally held that it is in the trial court's discretion to allow a witness to testify on rebuttal even though he has been in the courtroom after The Rule has been invoked. See, e.g., Hollins v. State, 340 So.2d 438, 441 (Miss. 1976); Butler v. State, 320 So.2d 786, 788 (Miss. 1975). As to law enforcement personnel specifically, this Court has also held that allowing a sheriff who has remained in the courtroom during the trial to testify is within the sound discretion of the judge. See, e.g., Ethridge v. State, 418 So.2d 798, 800 (Miss. 1982); Bell v. State, 443 So.2d 16, 21 (Miss. 1983); Gaines v. State, 404 So.2d 557, 562 (Miss. 1981). It should be noted, however, that in Gaines the sheriff removed himself from the courtroom during the testimony of witnesses that he would be required to rebut. Gaines at 562. In Ethridge the sheriff's testimony related only to the identification of photographs of the victim and to chain of custody of blood samples. Ethridge at 800. In Bell this Court also offered the opinion that the better practice was to exclude such officer from the courtroom if there is another officer available to keep security in the courtroom. Bell at 21.
Pre-Rules cases, however, were based on the premise that the sequestration rule was a procedural matter and its enforcement at trial is left to the sole discretion of the trial judge. See Johnson v. State, 346 So.2d 927, 930 (Miss. 1977); Hollins v. State, 340 So.2d 438, 441 (Miss. 1976); Butler v. State, 320 So.2d 786, 788 (Miss. 1975). Under the new M.R.E. 615, judicial discretion is more limited than it was under our pre-Rules cases. Now sequestration is a matter of right except for the three categories of witnesses spelled out in the Rule, as evidenced by the language "at the request of a party the court shall order witnesses excluded ..." except those witnesses enumerated in the Rule. This change in practice has been noted by the federal courts in construing F.R.E. 615, from which M.R.E. 615 was adopted verbatim. See, e.g., U.S. v. Buchanan, 787 F.2d 477, 485 (10th Cir.1986); U.S. v. Johnston, 578 F.2d 1352, 1355 (10th Cir.1978). The importance of the right to have witnesses sequestered, and the underlying rationale for the right was set out by the U.S. Supreme Court in Geders v. U.S., 425 U.S. 80, 87, 96 S.Ct. 1330, 1335, 47 L.Ed.2d 592 (1976):
The aim of imposing "the rule on witnesses ..." is twofold. It exercises a restraint on witnesses "tailoring" their testimony to that of earlier witnesses and it aids in detecting testimony that is less than candid.
See also, U.S. v. Perry, 815 F.2d 1100, 1105 (7th Cir.1987). The federal courts have also construed the Rule to apply to rebuttal witnesses  to rebuttal witnesses who have testified during the case-in-chief as well as to rebuttal witnesses who have not testified during the case-in-chief. U.S. v. Perry, 815 F.2d at 1105-06 (7th Cir.1987); U.S. v. Ell, 718 F.2d 291, 292 (9th Cir.1983); U.S. v. Ortega-Chavez, 682 F.2d 1086, 1089 (5th Cir.1982); U.S. v. Avila-Macias, 577 F.2d 1384, 1389 (9th Cir.1978).
Applying these principles to this case, the trial court erred in allowing Sheriff Russell to testify. The Rule had clearly been invoked by both parties at the beginning of the trial. At that point, all witnesses  case-in-chief witnesses and rebuttal *1317 witnesses  should have been sequestered. The Sheriff was not exempted from the Rule simply by virtue of his being the Sheriff, unless, under category (2) of the Rule's exceptions, the Sheriff is designated by the District Attorney as the state's representative because as the chief investigating officer in the case, his presence in the courtroom is necessary to assist the prosecution at trial. See, e.g., Burke v. State, 484 A.2d 490 (Del. 1984); People v. Cheeks, 682 P.2d 484 (Colo. 1984) (both Delaware and Colorado have adopted F.R.E. 615 into their states' evidence rules). Since the District Attorney had not so designated the Sheriff in this case, Sheriff Russell should have been sequestered.
The fact that Sheriff Russell was not going to be called during the state's case-in-chief likewise did not exempt him from the Rule. According to the record, Sheriff Russell was not the chief investigating officer for this case, and apparently the state's attorneys did not anticipate using him as a witness; however, they did know that Sheriff Russell had participated in the initial investigation of the crime before the case was turned over to the District Attorney's chief investigator. They also knew, by virtue of the discovery produced by the defense, that Douglas intended to call an expert witness to testify about the window. The state's attorneys should have known that Sheriff Russell had information about the status of the window from his initial investigation of the crime, such that it may become necessary to call him to testify to rebut the testimony of Douglas' expert. The state, knowing that the Rule had been invoked, should have had the Sheriff sequestered.
Having said all of that, we must turn now to the remedy available when the Rule has been violated. Neither M.R.E. 615 nor F.R.E. 615, upon which it is modeled, provides a remedy for its violation. The federal courts have noted that the best remedy for violation of the Rule occurs at trial. At trial two situations generally arise where the trial court is called upon to deal with sequestration violations. First, there is the situation, as in this case, where the trial judge knows before the witness testifies that the witness is in violation of the Rule. As the Court of Appeals for the Fifth Circuit states, failure of a witness to comply with a sequestration order does not alone render his testimony inadmissible. U.S. v. Suarez, 487 F.2d 236, 238 (5th Cir.1973). Whether to exclude the witness is left to the sound discretion of the judge. U.S. v. Warren, 578 F.2d 1058, 1076 (5th Cir.1978). Warren goes on to say that the judge should not exclude witnesses unless he determines that the testimony will result in probable prejudice to the other party. Warren at 1076, n. 16. In U.S. v. Blasco, 702 F.2d 1315 (11th Cir.1983), the Eleventh Circuit summarized that striking testimony is a serious sanction, appropriate only where a party has suffered actual prejudice and there has been connivance by the witness or counsel to violate the rule. Blasco at 1327. The more appropriate sanction is a "full-bore cross-examination" of the witness on the facts of the violation of the Rule. U.S. v. Jimenez, 780 F.2d 975, 981 (11th Cir.1986). Furthermore, the trial court could adequately respond to the possibility of prejudice by specifically instructing the jury that a violation of the Rule should be considered in evaluating the credibility of the witness. Jimenez at 981; see also U.S. v. Cox, 752 F.2d 741, 748 (1st Cir.1985).
With these principles in mind, the trial judge further erred in this case in allowing the Sheriff to testify without first determining that the defendant would not suffer probable prejudice from this testimony coming in violation of the sequestration rule, a determination that should be based upon the purpose of the Rule  to avoid witnesses "tailoring" their testimony to fit testimony that has gone before.
To further flesh out the ramifications of M.R.E. 615, we also discuss the other situation where a trial judge may have to deal with the Rule. That situation occurs when the witness testifies in violation of the Rule before the trial judge is aware of the violation. In that case, the available remedies include citing the witness for contempt, striking the testimony, *1318 or allowing the "full-bore" cross-examination. U.S. v. Blasco, 702 F.2d 1315, 1327 (11th Cir.1983). Again, however, striking the testimony is a serious sanction and should be used only where a party has suffered actual prejudice and there has been connivance by the witness or counsel to violate the Rule. Blasco at 1327. Absent such a determination that warrants striking the testimony, the most appropriate sanction would be allowing cross-examination of the witness on the facts of the sequestration violation and giving direction to the jury, if the trial court deems it necessary, that a violation of the Rule should be considered in evaluating the credibility of the witness.
When violation of the sequestration rule is assigned as error on appeal, as is the case here, the question then becomes one of the scope of review of the appellate court. We note that the majority of federal appellate courts have stated the test thus: failure of a judge to order a mistrial or to exclude testimony will not justify reversal on appeal absent a showing of prejudice sufficient to constitute abuse of discretion. U.S. v. Lassiter, 819 F.2d 84, 87 (5th Cir.1987); U.S. v. Buchanan, 787 F.2d 477, 485 (10th Cir.1986); U.S. v. Ortega-Chavez, 682 F.2d 1086, 1089 (5th Cir.1982); U.S. v. Warren, 578 F.2d 1058, 1076 (5th Cir.1978). Such a test is consistent with our unflagging support of the trial court's power to control the progress of a trial.
In this case we are confronted with a situation where the trial judge exercised his discretion in allowing Sheriff Russell to testify based on an erroneous reading of the requirements of M.R.E. 615. Whether such error amounts to reversible error under the "sufficient prejudice" test set out above is another question. We do not think that the error here amounts to sufficient prejudice. In so holding we note, from a careful reading of the record, that Douglas' attorney questioned Sheriff Russell extensively about the facts of the violation of the Rule, eliciting testimony from him that he had heard all the testimony during the trial for some two days and that he had not told anyone before the third morning of trial that he had lowered the window himself. Thus, the issue of Sheriff Russell's credibility was squarely before the jury. We further note that Sheriff Russell's testimony corroborated Deputy Lee's rebuttal testimony that when Lee first arrived on the crime scene the bedroom window was raised. Testimony that the window was up right after the crime would have been before the jury, even without Sheriff Russell's testimony. Sheriff Russell's testimony simply cleared up when and how the window became lowered. This aspect of Mr. Douglas' assignment of error, therefore, is without merit. We trust that hereafter, trial judges will deal with M.R.E. 615 questions as set out in our lengthy discussion above.
We turn to the second aspect of Mr. Douglas' assignment of error. Mr. Douglas argues that three of the rebuttal witnesses testified in violation of The Rule. They were not present in the courtroom during the previous testimony; however, he alleges that the district attorney went to the witness room and told them what the defendant, Mr. Douglas, and the defendant's investigator, Mr. Hall, had testified to. The district attorney then brought these witnesses to testify in rebuttal to the defendant's evidence. During the cross-examination of these witnesses, they all stated that the district attorney had told them what the defendant and his witnesses had testified about. Mr. Douglas' point is that it does no good to sequester witnesses if someone is going to repeat the testimony to them anyway. When the defendant raised his continuing objection to rebuttal testimony, the state responded that they were not telling the witnesses what to say, but were merely "prepping" them to testify. This Court stated in Reagan Equipment Company v. Vaughn Gin Company, 425 So.2d 1045 (Miss. 1983), that the purpose of The Rule "is to prevent witnesses from being in the courtroom while other witnesses testify so as to insure their testimony will be not be affected by that of other witnesses." Id. at 1048. In Reagan a witness had been put under The Rule and subsequently his attorney had consulted with him about his *1319 upcoming testimony. This Court stated, "however, we think the attorney in the case may consult with the witnesses who have been put under `The Rule.'" Id. at 1048.
We agree with Mr. Douglas' contention that it does no good to sequester witnesses if someone is going to relate testimony to them, anyway. Such practice indirectly circumvents the Rule by defeating its purpose. See, e.g., U.S. v. Johnson, 578 F.2d 1352, 1355 (10th Cir.1978). On the other hand, we recognize that attorneys need to consult with their witnesses in order to prepare them to testify. Preparing them, however, does not mean relating other witnesses' testimony. In preparing their witnesses, attorneys must be careful not to indicate specifically what other witnesses have testified about. We think preparation can be accomplished by asking generally what a witness may or may not know about a particular area of the case without asking "leading" questions or questions that indicate specifically what other witnesses have said on the matter. We admonish trial judges to be aware of the possibility that the sequestration rule may be circumvented in the guise of attorneys "prepping" their witnesses.
In situations where the judge determines that the Rule has been indirectly circumvented, the determinations and considerations we have set forth above should be made by the judge in deciding how to remedy the violation. Again, the trial judge erred in this case by not making any such determinations as to these three rebuttal witnesses. However, after carefully reviewing the record, we do not find that the error resulted in sufficient prejudice to Mr. Douglas to require reversal. In so holding, we again note that Mr. Douglas' attorney cross-examined each witness as to the facts of the violation of the Rule; therefore, the issue of the credibility of these witnesses as to their rebuttal testimony was before the jury. This aspect of Mr. Douglas' assignment of error is without merit.
No reversible error having been committed at the trial below, we affirm the conviction and sentence.
AFFIRMED.
PRATHER, ANDERSON and GRIFFIN, JJ., concur.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and GRIFFIN, J., specially concur.
ZUCCARO, ROBERTSON and SULLIVAN, JJ., dissent.
ROY NOBLE LEE, Chief Justice, specially concurring:
I agree with the result in the decision of this case, i.e., that the judgment of the lower court be affirmed. However, I do not agree with the discussion relating to Rule 615, exclusion of witnesses, Miss. Rules of Evidence.
The Rule 615 follows:
At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.
The third exception to the rule provides that a person whose presence is shown by a party to be essential to the presentation of his case may not be excluded. In the present case, the person sought to be excluded was the sheriff of the county (or deputy sheriff). In most rural counties of this state, since the beginning of the court system, the sheriff, or his special deputy, has been a courtroom officer, who maintains order in the courtroom, waits upon the court, and is the arm of the court in effecting the smooth, harmonious operation from day to day. In many counties no person other than the sheriff can perform those duties.
*1320 I would interpret Rule 615 to give the trial judge authority in deciding that the sheriff, or courtroom deputy, is essential in the operation of the court for the presentation of the cause than a person whose presence is shown by a party to be essential to the presentation of the cause. The court has always exercised its discretion in determining whether or not a party has been prejudiced by a violation of the sequestration rule and I would give the same interpretation to Part (3) of Rule 615.
The opinion at page 12 confirms my view. It states:
In this case we are confronted with a situation where the trial judge exercised his discretion in allowing Sheriff Russell to testify based on an erroneous reading of the requirements of M.R.E. 615. Whether such error amounts to reversible error under the "sufficient prejudice" test set out above is another question. We do not think that the error here amounts to sufficient prejudice.
I do not think the lower court erred in permitting the sheriff to testify in rebuttal after performing his duties in the courtroom throughout the trial. The opinion refers to the trial judge's action as "error," but then held that such error was not prejudicial. I would not call it error.
HAWKINS, P.J., and GRIFFIN, J., join this opinion.
ZUCCARO, Justice, dissenting:
I respectfully dissent and would reverse and remand for a new trial.
The trial of this case was conducted in March of 1986 (the Mississippi Rules of Evidence having become effective January 1, 1986) and, therefore, Rule 615 (exclusion of witnesses) of the Mississippi Rules of Evidence was in effect. At that time the rule which existed prior to January 1, 1986, ceased to have effect and this Court contemplated none, else it would have said so in its order adopting the Mississippi Rules of Evidence.
The facts of the case are amply set forth in the majority opinion.
Rule 615 (exclusion of witnesses) provides as follows:
At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.
Sheriff Russell was not excepted from the rule pursuant to 615(1) as he is not a party who is a natural person; not excepted pursuant to Rule 615(2) because he was not an officer or employee of a party which is not a natural person designated as its representative by its attorney, not excepted under Rule 615(3) because he was not a person whose presence was shown by a party to be essential to the presentation of his cause. Then, why was he permitted to testify when admittedly he sat through the entire trial and on rebuttal was able to testify over the objections of the defendant. The sheriff as set forth in the majority opinion, offered rebuttal testimony, over the timely objection of defense counsel, about a key issue in the trial, that is whether the broken window was up or down when he first investigated the crime scene. He bolstered, then, the testimony of a deputy sheriff and his testimony was prejudicial to defendant. The majority opinion sets forth sound and persuasive reasons for this case to be reversed and remanded, then affirms. I would hold that if it had been necessary that the sheriff stay in the courtroom to preserve order then he should not be a witness but should he be essential as a witness then he should not be the one to maintain order in the courtroom. The comments under our Rule 615 provide that "in each instance the person's presence must be shown by a party to be essential to the presentation of his case." No such allegation or showing was hinted at here.
As though letting Sheriff Russell testify were not enough, the trial court permitted three rebuttal witnesses to testify in violation of Rule 615 in that the three witnesses all stated that the district attorney had told them the substance and details of the testimony *1321 of other witnesses. This is a blatant violation of the purpose of Rule 615. It does no good to sequester witnesses if someone (in this case the district attorney, an officer of the court) is going to repeat the testimony to them of other witnesses. It was held in the case of United States v. Johnston, 578 F.2d 1352 (C.A. 10th, 1978) that a circumvention of the Rule requiring exclusion of witnesses upon request occurs when witnesses defeat the Rule's purpose indirectly by discussion of testimony they have given and events in the courtroom with witnesses who are about to testify. This should be avoided by instructions to counsel and the witnesses at the time of the Rule's invocation by a party is announced. The court further stated that the court should make clear that witnesses are not only excluded from the courtroom but also that they are not to relate to other witnesses the substance of their testimony or what occurred in the courtroom. In the case sub judice the district attorney was guilty of a circumvention of the rule and this is prohibited. The purpose of sequestering witnesses has long been recognized as a means of discouraging and exposing falsification, inaccuracy, and collusion. See Comments under our adoption of Rule 615. I am not impressed whatsoever by the State's answer that it was merely "prepping" them to testify.
Taken together, there were four separate and distinct serious violations of Rule 615 allowed over the objection of the defendant to occur. Enough is enough.
The defendant did not receive a fair trial and as the majority opinion properly states, "a fair trial and the ends of justice will be best served by the strict enforcement of the Rule" (Rule 615).
I would reverse and remand for a new trial with admonition to the trial court to carefully read and enforce Rule 615 of the Mississippi Rules of Evidence.
ROBERTSON and SULLIVAN, JJ., concur.