PAYNE, J., for the Court:
PROCEDURAL HISTORY
¶ 1. On February 18, 1997, Curtis McKnight was indicted for murder by the grand jury of Amite County. On October 31, 1997, McKnight was convicted by a jury of his peers and was found guilty. He was sentenced to life imprisonment. Feeling aggrieved by the jury verdict and the sentenced imposed, McKnight filed a motion for a J.N.O.V and a motion for a new trial. These motions were denied on December 18, 1997. Feeling further aggrieved. McKnight filed his appeal on January 26, 1998, seeking reversal of the trial court’s verdict.
¶ 2..Having reviewed the record and applicable law, we affirm.
FACTS
¶ 3. On September 29, 1993, Kimberly Tobias was standing at the kitchen window of her home talking to Teresa Norman. Late in the evening, Kimberly was struck in the head by a bullet. She died.
¶ 4. Teresa ran home. Because the Normans did not have a phone, Teresa and her mother walked to the Gloster Police Department — which was several blocks down the street. The police acted immediately, secured the area, and confirmed what they believed was a bullet hole in the kitchen window.
¶ 5. After compiling the evidence, the investigation stopped.
¶ 6. Approximately three years later, Leon Cammack came forward with information. Leon testified that Curtis McKnight told him several weeks before the murder that he (McKnight) had agreed to kill Derrick “Pimp” Tobias for $1,000 and a ear. He also testified that on the day of the murder he and McKnight were drinking. However, Cammack’s story diverges from McKnight’s past this point.
¶ 7. Cammack also testified that when he and McKnight had passed Kimberly’s house, McKnight went up to Kimberly’s window while Cammack stayed on the sidewalk. Cammack stated that McKnight pulled out a gun and shot Kimberly. According to Cammack, McKnight told him that if he could not kill Derrick, maybe killing his sister would garner him some money. Cammack further noted that McKnight was in possession of a .380 revolver several weeks before the murder. According to Cammack, McKnight pulled up his shirt and revealed the pistol. Cam-mack testified that this was the same gun that he saw McKnight use to shoot Kimberly.
¶ 8. Mar ell Weatherspoon testified that a .380 revolver was . given to him by McKnight for safe keeping about a month before the murder. Weatherspoon stated that he gave the pistol to John Norwood. Norwood placed the pistol in his automobile. Cammack testified that McKnight admitted that he had taken the pistol from the glove compartment of Norwood’s car— which confirmed the testimony of Norwood that the pistol he was given was missing from his automobile’s glove compartment. McKnight admitted to Deputy Chief Bul-ter that he possessed a .380 pistol, and forensic scientist Steve Byrd of the Mississippi Crime Lab confirmed that the bullet extracted from Kimberly’s head was consistent with the weight of a .380 bullet.
¶ 9. McKnight denied killing Kimberly. He offered the testimony of Willie Brown as proof of his alibi during this period of time. Willie Brown stated that he saw McKnight at a grocery store and gave him a ride home in his truck between 9:30 p.m. and 9:50 p.m.
¶ 10. As further evidence of his innocence, McKnight offered the testimony of Adaryll McDowell who testified that Joshua Williams admitted to killing Kimberly. However, it was noted at trial that McDowell had a felony conviction for obstruction of justice in a previous murder investigation for telling three different stories to law enforcement officer about that murder.
*473 ISSUES PRESENTED
I. WHETHER THE JURY’S VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 11. In assessing an issue based upon overwhelming weight of the evidence, we examine the standard of review set by our supreme court. In Moore v. State, 617 So.2d 272, 274 (Miss.1993), the supreme court stated:
The decision whether to grant a motion for new trial on grounds that the jury verdict is against the overwhelming weight of the evidence is committed to the sound discretion of the trial judge in the first instance. Crenshaw v. State, 520 So.2d 131, 135 (Miss.1988). The standard is whether the verdict is so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would be to sanction an unconscionable injustice.
McKnight argues that the evidence presented by the prosecution was insufficient for the jury to support their decision. We disagree.
¶ 12. It is the jury’s function to review the testimony of the witnesses and seek the truth. The jury heard the evidence presented and voted to convict McKnight. Eyewitness testimony to the murder was presented by the State. This evidence pointed guilt to McKnight. Circumstantial evidence was also produced. The pistol given John Norwood was taken. McKnight revealed a .380 pistol on his person. McKnight gave a .380 to Weath-erspoon, and McKnight confessed to having a .380 pistol. The information reflects that the jury did have sufficient and credible evidence with which to fully assess the circumstances surrounding the death of Kimberly Tobias.
¶ 13. The State submits that the question of credibility of the witnesses testimony is one resolved by the jury. We agree. It is the function of the jury to sift through the evidence and weigh that evidence which has been produced.
¶ 14. Having read the arguments presented, we find this citation of error to be without merit.
II. WHETHER THE PROSECUTION VIOLATED THE RULES OF DISCOVERY IN FAILING TO PROVIDE THE NAMES OF JAMES WOODWARD AND JOSHUA WILLIAMS AS SOURCES OF POSSIBLE EXCULPATORY INFORMATION.
¶ 15. McKnight’s next argument centers on an alleged discovery violation. Specifically, McKnight submits that the State should have provided the names of James Woodward and Joshua Williams as a potential source of information which might exculpate him from this crime. Quoting Cole v. State, 666 So.2d 767, 779 (Miss.1995), McKnight insists that “[s]up-pression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” The State submits that it did not suppress the names of these two individuals with the intent to surprise McKnight.
¶ 16. At trial, Cammack was asked by McKnight’s attorney on cross-examination who had threatened to testify against him (Cammack) — testimony which might implicate him in the murder. Cammack’s answer to this question was James Woodward. Subsequently, Woodward’s name was brought up by Deputy Butler who testified that he routinely questioned jail inmates to gain information in ongoing investigations. From this questioning, Woodward mentioned Cammack as having information regarding this murder. The State argues that the only information that could be gained by knowing Woodward’s name was that he was the one who told Deputy Butler to contact Cammack. We agree. Cammack testified at trial, and the *474 trial court was well within its discretion in ruling as it did.
¶ 17. A continuation of this argument leads us to testimony by Officer William Vallely, who stated that Joshua Williams had been a possible suspect. McKnight argues that the State failed to provide his name as a source of possible exculpatory information, and this failure rises to the level of violating due process. We disagree. Obviously, the State found Williams to be unimportant to their investigation and dismissed him from discovery due to his unimportance, and after reviewing the record, we find that the information Officer Vallely offered concerning Williams was of little value as he could not find him for questioning. In his own words, Officer Vallely stated:
Q. Okay. And what, if any, information did you obtain on Mr. Joshua Williams that helped you in your investigation in this case?
A. Really not a lot. I never could locate the man.
Q. Okay. At any time during your investigation of this case have you made contact or been able to find Mr. Joshua Williams?
A. No.
While it is true that Officer Vallely mentioned Williams as a possible suspect, it is inconceivable from the mountain of evidence produced — directing guilt toward McKnight — for this Court to find reversible error. To begin with, the aforementioned evidence points guilt toward McKnight. A further obstacle to finding error would be that McKnight had every opportunity to question Adaryll McDowell concerning what he [McDowell] knew about Williams’s involvement or lack thereof, to "the issue being appealed today. As Officer Vallely stated:
A. He (McDowell) give me some information about an individual that supposedly might be involved in it.
Having reviewed the arguments and the law, and after reading the record, we find this citation of error to be without merit.
III. WHETHER THE DEFENDANT SHOULD BE RESENTENCED TO PROVIDE FOR PAROLE ELIGIBILITY PURSUANT TO FORMER § 97-3-21 AND § 47-5-138 OF THE MISSISSIPPI CODE OF 1972.
¶ 18. McKnight failed to contemporaneously file an objection to the sentence imposed at trial and in his motion for a new trial. However, there is nothing in the record to show that his sentence was “without the possibility of parole.” We find that McKnight was sentenced according to the applicable law. McKnight is correct that he is eligible for parole under the provisions of Miss.Code Ann. § § 47-7-3 and 47-5-138 (1972) and the holdings in Puckett v. Abels, 684 So.2d 671 (Miss.1996). Because his crime was complete on September 29, 1993, the legislation know as the “truth in Sentencing” is not applicable to his sentence. Therefore, he is entitled to parole and earned time according to the law on the date the crime occurred. Stated differently, McKnight believes that because the crime he committed was complete on September 29, 1993, the legislation known as the “Truth in Sentencing” is not applicable to his circumstance. Thus, he believes that he is entitled to parole and earned time.
¶ 19. In Puckett, the appellees were all charged with felony crimes that occurred prior to July 1, 1995, but those same individuals were not to be sentenced until after July 1, 1997. Id. at 672. These individuals were concerned because they were sentenced after July 1, 1995 and would be required to serve eighty-five percent of the sentence they received. Id. The supreme court noted that “Senate Bill 2175 [1] ... has the effect of increasing the punishment beyond what was prescribed when the crimes were committed.” Id. at *475 678. The supreme court noted that Senate Bill 2175, as applied to these individuals is ex post facto, and in direct contravention of the United States and Mississippi Constitutions. Id.
¶20. On October 81, 1997, McKnight was sentenced to life in prison for violating Miss.Code Ann § 97-3-19 (1972) on September 29, 1993. Since his life sentence makes no mention of being without possibility of parole or under the 85% rule, the sentence will be carried out under the rule in Puckett as any other life sentence imposed for a crime committed prior to July 1, 1995. There is nothing in the record to indicate anything different, so there is no need to reform the life sentence. The assignment of error is meritless not because it is wrong, but because it is unnecessary.
IV. WHETHER THE COURT ERRED IN ALLOWING DONALD BUTLER TO TESTIFY FOR THE STATE AFTER HE REMAINED IN THE COURT ROOM THROUGHOUT THE TRIAL AFTER THE RULE WAS INVOKED.
¶ 21. McKnight’s next argument centers on the fact that Donald Butler remained in the courtroom during the trial after the rule of sequestration had been invoked. McKnight further argues the Court’s allowance of Deputy Butler’s testimony in the State’s case violated Mississippi Rules of Evidence 615. For reversal to occur, McKnight must show that a violation occurred and that there was a showing of prejudice sufficient to constitute an abuse of discretion. See Douglas v. State 525 So.2d 1312, 1318 (Miss.1988).
¶ 22. The State argues that although Deputy Butler was allowed to testify, his testimony did not create prejudicial error as a rebuttal witness. The trial judge recognized the officer’s official capacity as well as his limited testimony about the investigation, finding that the witness would qualify as a representative of the State under Rule 615. The comments to Rule 615 approve of this designation made by the trial judge concerning Deputy Butler — “[A] party that is not a natural person (State of Mississippi) is entitled to have a representative (Deputy Butler) present.”
¶ 23. In the instant case, the trial judge noted that McKnight suffered no prejudice due to the fact that the deputy remained in the courtroom. Furthermore, the trial judge stated that Deputy Bulter’s testimony corroborated the testimony of Cam-mack.
¶ 24. We find this citation of error to be without merit.
V. WHETHER THE COURT ERRED IN ALLOWING TESTIMONY ABOUT AN ALLEGED STATEMENT GIVEN TO DEPUTY BUTLER BY JAMES WOODARD THAT WAS NOT DISCLOSED TO THE DEFENDANT PRIOR TO TRIAL AND WAS OBJECTED TO BECAUSE OF A VIOLATION OF DISCOVERY RULES.
¶ 25. The focus of the McKnight’s last citation of error centers on the direct testimony of Donald Butler, who testified regarding a statement allegedly given to him by James Woodard which collaborated the testimony of Leon Cammack. McKnight argues that this is a discovery violation because he should have had this information prior to trial. Consequently, McKnight insists that error has been committed.
¶ 26. The State argues that the alleged error is one that was invited by McKnight, since Woodard’s name first appeared on cross-examination. The State also says in its brief that “the officer testified that Woodard simply told him to talk to Leon (Cammack) and that the officer had interviewed numerous witnesses.” Having reviewed the argument, we simply cannot find error with what has occurred.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF AMITE COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT *476 OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO AMITE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, AND THOMAS, JJ., CONCUR.

. Miss.Code Ann. § 47-5-138 (Supp.1993) amended by Act of Apr. 17, 1995, ch. 596, 1995 Miss. Laws 941 (codified as amended at Miss.Code Ann. § 47-5-138(5) (Supp.1998)).