# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00981-COA

**THEOTIS RANDLE A/K/A THEODIS RANDLE**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/09/2015 |
| TRIAL JUDGE: | HON. LEE SORRELS COLEMAN |
| COURT FROM WHICH APPEALED: | CLAY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARK ANDREW CLIETT |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF SEXUAL BATTERY AND SENTENCED TO TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED ON POSTRELEASE SUPERVISION, AND TO REGISTER AS A SEX OFFENDER |
| DISPOSITION: | AFFIRMED - 02/21/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES AND CARLTON, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. Theotis Randle was convicted of sexual battery by a Clay County Circuit Court jury and sentenced to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC), with five years suspended on postrelease supervision. He appeals his conviction, claiming the evidence was insufficient to support the verdict and that errors during the trial warrant a reversal of his conviction. Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.　　On March 9, 2010, twenty-year-old "Carol"[1] was alone at her parents' home after taking her father to the doctor. Her father had left the house to go to the pharmacy with another family member. When the doorbell rang a few minutes later, Carol assumed her father had returned to retrieve his bag of prescription medications he had left behind; so she unlocked the door, turned the handle, and began to walk away with her back to the door. She then felt someone "bear hug" her from behind, and she was forced to the couch in the living room. When she managed to turn her head, she saw Randle, a handyman who occasionally worked for her grandmother. Randle pinned Carol down, shoved his elbow into her back, and used his other hand to pull down her pants and underwear. Carol initially struggled and attempted to reach for a phone, but froze in shock when Randle began to rape her. When he finished a few minutes later, he zipped his pants, told her he would "see [her] later," and left the home.

¶3.　　Carol called her cousin, a registered nurse, who advised her to contact law enforcement and have a rape kit administered. Her grandmother and aunt arrived shortly thereafter, and Carol was taken to the sheriff's department, where she gave a statement to Deputy Ramirez Williams. She was then taken to the hospital to have a rape kit administered. Randle gave a statement to Deputy Williams the following day, denying that he had sex with Carol. A buccal swab (DNA) was taken from Randle and sent to a laboratory. This sample from Randle matched the vaginal sample taken from Carol.

---

[1] We are using a pseudonym in place of the victim's real name to protect her identity.

¶4.    Randle was charged with sexual battery.  At trial, Carol said she had known Randle for a few years, and he had made uncomfortable, inappropriate sexual comments toward her prior to the incident.  She also recounted one incident where he "rubbed up against [her]" when she walked by him in a hallway while he was painting.  She told him to not touch her, and he "backed off."  Carol told her father about Randle's ongoing behavior approximately two to three months before the rape, and her father told Randle to leave the girl alone.

¶5.    Randle amended his version of the event at trial, now claiming that the two had consensual sex on the day in question.  He said he offered Carol $50, but he never paid her. Randle explained he initially lied to law enforcement because he was scared.

¶6.    The jury convicted Randle of sexual battery, and he was sentenced to twenty-five years in the custody of the MDOC, with five years suspended on postrelease supervision. He filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial.  The trial court denied the motion, and Randle now appeals.  Finding no merit to the issues raised by Randle, we affirm the judgment.

### DISCUSSION

I.    **Whether there was sufficient evidence to support the verdict and whether the verdict was against the overwhelming weight of the evidence.**[2]

¶7.    The jury was instructed that if it found Randle "unlawfully, willfully, and feloniously,

_____

[2] Although Randle titles this issue in his brief as the verdict being against the overwhelming weight of the evidence, which would warrant a new trial, his substantive legal argument only addresses the sufficiency of the evidence, which is a different standard of review.  Therefore, for the sake of thoroughness, we will address both the sufficiency and weight of the evidence.

knowingly and intentionally" engaged in sexual intercourse with the victim "by inserting his penis into her vagina . . . without her consent," it was to find Randle guilty of sexual battery. Randle argues the verdict was not supported by the evidence, as there was no evidence Carol had sex against her will, noting there was no "sign of a struggle" and no evidence she resisted. He notes the absence of any evidence of any injury to her body. Randle claims the two had a prior sexual relationship and that she consented to sex.

¶8. When challenging the sufficiency of the evidence on appeal, "the issue . . . is whether the evidence shows 'beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.'" *Washington v. State*, 184 So. 3d 977, 981 (¶14) (Miss. Ct. App. 2015) (quoting *Bush v. State,* 895 So. 2d 836, 843 (¶16) (Miss. 2005)). "Where the evidence fails to meet this test[,] it is insufficient to support a conviction." *Id.* "A challenge to the weight of the evidence[, however,] will be successful only when the verdict 'is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Id*. at 982 (¶21) (quoting *Bush,* 895 So. 2d at 844 (¶18)). "The evidence must be viewed in the light most favorable to the verdict." *Id*. (quoting *Jenkins v. State,* 131 So. 3d 544, 551 (¶23) (Miss. 2013)).

¶9. Carol testified that she did not like Randle. Her father corroborated this testimony, stating that Carol told him Randle was bothering her and that he told Randle to stay away from his home. Randle also told Deputy Williams that Carol did not like him. Carol acknowledged that while she initially struggled against Randle, she did not put up much of

4

a fight, because she was in disbelief as to what was occurring; so it is not surprising there was no mess in the home or physical injuries to report.

¶10. The forensic DNA analyst who personally conducted the laboratory testing on both the sexual-assault kit and the buccal swab collected from Randle testified that sperm was detected on the vaginal swab taken from Carol, and that "sperm fraction did match that of the suspect that was submitted, Theotis Randle." Randle initially told Deputy Williams he did not touch Carol and admitted that "me and [Carol] don't get along." But at trial, after the DNA evidence and laboratory results had been admitted into evidence, Randle testified that the sex was consensual and that the two had carried on a prior clandestine relationship. Randle claimed that he initially lied to Deputy Williams because he was scared. However, "[c]onflicting testimony does not evince overwhelming evidence; where the verdict turns on the credibility of conflicting testimony and the credibility of the witnesses, it is the jury's duty to resolve the conflict." *Ambrose v. State*, 133 So. 3d 786, 793 (¶23) (Miss. 2013) (quoting *Brown v. State,* 995 So. 2d 698, 702 (¶13) (Miss. 2008)). As the State points out, Randle only changed his story after the DNA results were reported.

¶11. Accordingly, we find the sufficiency and weight of the evidence support Randle's conviction for sexual battery.

> **II.     Whether the trial court erred in allowing Deputy Williams to remain in the courtroom, violating Mississippi Rule of Evidence 615.**

¶12. After direct examination of Deputy Williams, the jury was sent out at defense counsel's request so the defense could set up some equipment that it intended to use during

5

cross-examination. When the State realized defense counsel was intending to introduce the audio recording of the victim's statement as a prior inconsistent statement, it objected that the proper foundation had not been laid. While counsel argued over the statement's admissibility, Deputy Williams remained on the witness stand, until defense counsel asked that he be removed.

> BY [DEFENSE COUNSEL]: Your Honor, I would say that I don't think [Deputy] Williams is supposed to be here while this is going on.
>
> . . . .
>
> BY THE COURT: I don't know of any reasons why a witness couldn't hear the arguments of the attorneys.
>
> BY [DEFENSE COUNSEL]: Because he could hear the testimony of a prior witness of what – what was stated by my colleague.
>
> . . . .
>
> BY THE COURT: Are you saying it's a violation of the rule of sequestration of witnesses? Is that what –
>
> BY [DEFENSE COUNSEL]: Yes, Your Honor.

While he did not think the witness's presence violated the rule, the trial judge did excuse Deputy Williams out of "a super abundance of caution."

¶13. Randle now argues that leaving Deputy Williams on the stand while the attorneys discussed the admissibility of the victim's statement was a violation of Mississippi Rule of Evidence 615, which provides: "At a party's request, the court must order witnesses

6

excluded so that they cannot hear other witnesses' testimony."[3]  We find no merit to this claim.  The rule's purpose is to "exercise a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses and aid in detecting testimony that is less than candid.'"  *Avery v. State*, 119 So. 3d 317, 319 (¶7) (Miss. 2013) (quoting *Douglas v. State,* 525 So. 2d 1312, 1316 (Miss. 1988)).  "Simply put, Rule 615 guards against 'falsification, inaccuracy, and collusion.'"  *Id*. (quoting M.R.E. 615 cmt.).  Deputy Williams was not present during the testimony of another witness.

¶14.    Randle claims Deputy Williams was allowed to hear what Carol had "testified to," but the only specific comment made by the prosecution addressed whether she had used the word "fight" in her statement, and her comment that she tried to "fight him off."  The supreme court has held that, absent a showing of prejudice, reversal on appeal for violation of the rule is not warranted.  *Douglas*, 525 So. 2d at 1318.  Randle has failed to show how he was prejudiced by Deputy Williams's presence on the stand during the attorneys' discussion.  Furthermore, defense counsel was granted his remedy – the trial judge excused Deputy Williams for the remainder of counsel's arguments. We find no merit to Randle's argument.

>    **III.    Whether the trial court erred in limiting a witness's testimony and stating that the State is entitled to a fair trial.**

¶15.    After the State rested, defense counsel put the State on notice that a defense witness, Roy Hamilton, would testify that Randle and Carol had a prior sexual relationship.  The State

---

[3] The Mississippi Rules of Evidence were restyled in 2016 "to make them more easily understood and to make style and terminology consistent throughout the rules." M.R.E. 615 advisory committee's note. While we are quoting the most recent version of Rule 615, the substance of the rule is the same.

objected to the proffered testimony, as Hamilton was only listed as a potential character witness in discovery, and the defense acknowledged it had not disclosed to the State the substance of Hamilton's testimony. Determining that the proffer of Hamilton as a fact witness constituted a discovery violation, the trial court ruled that Hamilton could only testify as a character witness; he was excluded from testifying about an alleged relationship between the defendant and the victim.

¶16. Randle claims the trial court's ruling was "improper." However, this claim is moot, since Hamilton never appeared in court to testify. Regardless, we find no error in the court's ruling. "[T]he rules of discovery are to prevent trial by ambush." *Kindred v. Columbus Country Club Inc.*, 918 So. 2d 1281, 1285 (¶9) (Miss. 2005) (citing *Busick v. St. John,* 856 So. 2d 304, 320 (¶55) (Miss. 2003)). "Procedural rules are 'designed to assure to the maximum extent practicable that cases are decided on their merits, not the fact that one party calls a surprise witness and catches the other with his pants down.'" *Id*. (quoting *Broadhead v. Bonita Lakes Mall Ltd. P'ship,* 702 So. 2d 92, 102 (¶36) (Miss. 1997)).

¶17. Randle further argues that in ruling to limit Hamilton's testimony, the trial court prejudiced Randle's defense by commenting:

> The defendant has a right to a fair trial, but *the State also has a right to a fair trial*, and in this instance the [c]ourt specifically finds that lesser sanctions or lesser courses of action, other than limiting the witness's testimony, would *deprive the State of its right to a fair trial*[.] . . . [T]he time necessary to properly investigate this surprise witness's testimony is not reasonably available to the State, and therefore there is extreme prejudice and unfair surprise in this case.

(Emphasis added). Randle argues this was an inaccurate statement of law. While the State

8

agrees that it has no constitutional right to a fair trial, it notes that this comment by the trial judge was merely that – a comment. We agree. The court's ruling was based on a violation of the court's rules of discovery and Mississippi Rule of Evidence 412(c)(1)(A)-(C), which provides that a defendant who intends to offer evidence of a victim's past sexual behavior must "make a motion accompanied by an offer of proof describing the evidence . . . [,] file the written motion and offer of proof at least 15 days before trial, unless the court sets a later time . . . [, and] serve all parties and the victim." Furthermore, the jury was not present during the court's ruling; so we fail to see how this comment prejudiced Randle's defense. Therefore, we find this claim is without merit.

### IV. Whether trial counsel's performance constituted ineffective assistance of counsel.

¶18. Randle asserts several claims of ineffective assistance of counsel on direct appeal: (1) trial counsel's failure to adequately cross-examine witnesses; (2) trial counsel's discovery violations related to Hamilton's testimony and the failure to file a pretrial motion under Rule 412; (3) trial counsel's failure to move for a mistrial when Deputy Williams testified that the sheriff's office had accidentally deleted the crime-scene photos; and (4) trial counsel's failure to request a jury instruction giving a presumption that any information in the photos would be presumed to be in Randle's favor.

¶19. "Ordinarily, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings," as the appellate court's review "is limited to the trial court record[,] . . . and there may be instances in which insufficient evidence exists within the record to address the claim adequately." *Archer v. State*, 986 So. 2d 951, 955 (¶15)

9

(Miss. 2008) (citing *Wilcher v. State,* 863 So. 2d 776, 825 (¶171) (Miss. 2003)). "[T]his Court may only consider the merits if '(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.'" *Barber v. State*, 143 So. 3d 586, 595 (¶29) (Miss. Ct. App. 2013) (quoting *Wilcher,* 863 So. 2d at 825 (¶171)). The proper procedure in such a case "is to deny relief, preserving the defendant's right to argue the issue through a petition for post-conviction relief." *Archer*, 986 So. 2d at 955 (¶15) (citing *Read v. State,* 430 So. 2d 832, 837 (Miss. 1983)).

¶20. The State expressly declines to stipulate that the record is adequate to consider Randle's claim, but it argues, in the alternative, that "Randle's claim lacks merit[.]" Because Randle has failed to show "ineffectiveness of constitutional dimensions," and the State has not stipulated the record is adequate to address Randle's claims, we dismiss his claim of ineffective assistance of counsel without prejudice to Randle's ability to raise it in postconviction proceedings.

¶21. **THE JUDGMENT OF THE CIRCUIT COURT OF CLAY COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED ON POSTRELEASE SUPERVISION, AND TO REGISTER AS A SEX OFFENDER, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**