# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CP-01512-SCT

*ARVIN DALE ROCHELL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/01/1998 |
| TRIAL JUDGE: | HON. HENRY LAFAYETTE LACKEY |
| COURT FROM WHICH APPEALED: | CALHOUN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | JIM HOOD |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 9/23/1999 |
| MOTION FOR REHEARING FILED: | 10/06/99; denied 12/02/99 |
| MANDATE ISSUED: | 12/09/99 |

**BEFORE PRATHER, C.J., MILLS AND COBB, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. On December 7, 1992, Arvin Dale Rochell was indicted for Count I, the capital murder of Hazel McMahan; Count II, the capital murder of Nell McMahan; and to Count III, arson. On January 11, 1994, Rochell pled guilty before the Circuit Court of Calhoun County to Count I, which was reduced to murder, and Count III, arson. He was sentenced to concurrent sentences of life in prison for Count I and 20 years in prison on Count III. The capital murder charge contained in Count II of the indictment was retired to the files.

¶2. On December 10, 1996, Rochell petitioned for post-conviction relief, and alleged the following: (1) his statements to the police were involuntary and should have been suppressed; (2) his constitutional right to a speedy trial was violated; (3) his convictions for both murder and the underlying felony of arson constituted double jeopardy; (4) his indictment was defective; (5) his right to effective assistance of counsel was violated; and, (6) his guilty plea was not voluntarily, intelligently, and knowingly entered. The trial court denied Rochell's petition without an evidentiary hearing.

¶3. Rochell appealed, and this Court, via an unpublished opinion, reversed for an evidentiary hearing on the issue of whether Rochell's plea was voluntary.[1] In addition, this Court found the other issues raised by Rochell to be moot, procedurally barred, and/or without merit. On April 28, 1998, the circuit court held an evidentiary hearing, at which Rochell proceeded *pro se*. The following persons testified: Rochell; his mother, Barbara McMahan; his sister, Teresa Broughman; and, his trial attorneys, Robert S. Cooper and David Hill. The trial judge held as follows:

> The Court paid close attention to the witnesses and had the opportunity to observe all the witnesses. The Court finds that Rochell was adequately, sufficiently, and fully advised by two highly competent and experienced trial attorneys of his rights, options and hazards and that his guilty plea was voluntarily, intelligently and knowingly given.

Rochell appeals and raises the following issues for consideration by this Court:

> **A. Whether the Appellant's guilty plea was voluntarily, intelligently, and knowingly given per Rule 8.04 (A)(3), Uniform Rules of Circuit and Court, or the plea was induced by fear and other improper inducements?**
>
> **B. Whether the trial judge abused his discretion in erroneously shifting the burden of proof to the State in violation of Miss. Code Ann. § 99-39-21(6) and § 99-39-23 (7)?**
>
> **C. Whether the trial judge erroneously limited cross examination of State witnesses, in violation of Rule 611(b), Rules of Evidence, which seriously denied the Appellant a fair hearing and caused prejudice?**
>
> **D. Whether the trial judge abused his discretion in allowing a key State witness to remain after the rule had been invoked which denied due process and tainted future testimony?**
>
> **E. Whether the trial judge prejudiced the Appellant's case by not entertaining a Writ of Habeas Corpus which forced the Appellant to conduct the hearing without discovery as requested per Miss. Code Ann. § 99-39-15 and § 99-39-23 (2)?**

## STATEMENT OF THE FACTS

PLEA HEARING:

¶4. At the plea hearing, Rochell recounted the underlying facts as follows: "I went home drunk and set a sheet on fire in the bathroom closet." Rochell also stated that he knew the victims were in the house. He fell asleep on the couch. When he awakened, the house was filled with smoke. Rochell led his uncle from the house and called the fire department.

¶5. At the time of the plea, Rochell had a sixth-grade education, and "could barely read and write". However, Rochell was later educated, while incarcerated. Rochell testified that he knew and understood the consequences of the guilty plea, including the legal and constitutional rights that he was relinquishing. Rochell also stated that he understood that he was waiving his rights to have: (a) a speedy trial by a jury with the aid and assistance of counsel; (b) the State prove his guilt beyond a reasonable doubt, as determined by a unanimous jury, before being convicted; (c) confrontation of witnesses against him; (d) witnesses on his behalf; (e) his own testimony presented or not presented at trial; and, (f) an appeal.

¶6. Rochell was represented at the plea hearing by Robert S. Cooper and David Hill, two experienced criminal defense attorneys. Rochell stated that he was satisfied with his attorneys and that his plea was not the result of threats or promises. Rochell stated that he was entering the guilty plea because he was, in fact, guilty -- and for no other reason.

EVIDENTIARY HEARING:

¶7. At the subsequent evidentiary hearing, Rochell (age 29) testified that he lied at the plea hearing. Rochell stated that he was advised by his attorneys that they could learn about the strength of the State's case through plea negotiations, so Rochell allowed the plea negotiations. Rochell repeatedly rejected a plea involving consecutive sentences of life in prison for the murder and 20 years in prison for the arson.

¶8. Prior to the plea hearing, Rochell asked Cooper via telephone "point blank what the chances was getting the motion to suppress sustained. [Cooper] said it was impossible in this court. [Rochell] asked [Cooper] about an appeal. [Cooper said] that appeal was a long ways down the road; that [Rochell] could be out on a plea before a higher court would hear [the] appeal." According to Rochell, Cooper stated that the confession was not going to be suppressed, and that "[i]f the statement is allowed into evidence, that the State [was] going to withdraw all plea negotiations; and [Rochell would], indeed, get the death sentence at trial."

¶9. Rochell and his family met with Cooper and Hill on the morning of the plea hearing. Rochell contended that a similar conversation was held, regarding the suppression of the statement. Rochell further claimed that the following occurred:

> I [Rochell] spoke then and made the statement that I would be lying under oath if I pled guilty to these crimes and told the Court that I did these crimes.

> Mr. Cooper spoke up and said, "They don't care this time." David Hill looked at him like he was crazy.

> Well, when he said that, I knew, you know, common sense, you don't lie in court; but I'm thinking, man, something. This ain't right.

> So I asked Mr. Cooper about the life sentence. Mr. Cooper acts like he gets hostile, mad. I don't know really what word to use; but he speaks up; and he says, "I thought we had this out of the way. I thought you was here to plead guilty. At least this way you can beat the death sentence and come up for parole in about eight years."

> Mr. Hill spoke up and said Mr. Cooper was right. This way I could be free in a few more years because I would make parole because there wouldn't be anyone fighting it when I come up for parole; so I thought about it a minute; and I asked him, I said, "Could I speak to my family alone?" They both agreed and left the room.

¶10. Rochell further testified that, when the attorneys returned, he, once again, told them that he would be perjuring himself, if he pled guilty. According to Rochell, Hill said: "Well, the judge ain't going to ask you about no perjury". Rochell then agreed to take the plea. The attorneys then discussed with Rochell the questions that the judge would ask during the plea hearing. Rochell's mother (Barbara McMahan) corroborated this account of the events of the morning of the plea hearing. However, she admitted that the

attorneys did not tell Rochell that he had to plead guilty. She also admitted that neither of the lawyers told Rochell to lie under oath.

¶11. Rochell's sister (Teresa Broughman) also corroborated Rochell's testimony about the morning Rochell entered the plea. She stated that Rochell was reluctant to enter the plea, and that he cried afterwards, because he had "signed [his] life away." However, Broughman admitted that the lawyers did not tell Rochell to lie under oath, and they did not make him enter the plea. When asked if it was Rochell's choice to enter the plea, Broughman responded, "I guess."

¶12. Rochell stated that the following occurred during the plea hearing:

Judge Coleman goes to asking me questions . . . I thought that if he tripped me in a lie somewhere during me entering the plea, then he wouldn't accept the plea; and I believed that if he didn't accept the plea, I was going to get the death sentence.

It was a no-win situation. It was life or death, and I'm going to tell you the truth. I would lie again if I thought that it was life or death. If I've got to lie to keep from getting death, then I would lie; and I did lie. I lied several times; but that was what I was led to believe; that it was okay to lie.

¶13. Rochell testified that he lied at the plea hearing when he stated: (a) he understood that he could be charged as an habitual offender in the future; (b) he was satisfied with the services of his attorneys; (c) he was not promised or threatened with anything, in order to induce his plea; (d) he understood that the trial judge could vary from the State's sentencing recommendation and impose a different plea; (e) he was voluntarily entering the guilty plea because he was guilty, and for no other reason; (f) he did not want to ask his attorneys about anything; (g) he knew of no reason why the judge should reject his plea; (h) he killed Hazel McMahan; (i) he burned the McMahans' dwelling house; and, (j) his description of the crimes. Rochell also stated that he was uncertain, until the judge told him at the plea hearing, as to which murder he was pleading guilty; Rochell testified that his other statements during the plea hearing were all true.

¶14. Specifically, Rochell admitted that the following statement from the transcript of the plea hearing was true:

Q. [BY THE PROSECUTOR]: Then [the trial judge] asked you, "Having heard me list the dates and places and individuals involved in each of these counts to which you are pleading guilty, are you telling me you realize these are the crimes to which you are pleading guilty to; and that you did, in fact, commit these crimes; and your response was, "Yes, sir." is that a truthful answer?

A. [BY ROCHELL]: Yes, sir, it is.

¶15. Rochell felt that his attorneys were "cramming" the plea "down [his] throat." However, both attorneys denied pressuring Rochell or coercing Rochell "in any way" to enter a guilty plea. Attorney Hill testified that he never told Rochell to lie or saw anyone tell Rochell to lie. Hill was unaware of any reason Rochell's plea could be involuntary -- based on the actions of the attorneys in the case.

¶16. Hill admitted that Rochell maintained innocence at "various points [throughout the] representation", but Hill stated:

. . . there was a point in time when I recall you [Rochell] asking us [Hill and Cooper] to seek from the

State the State's offer as to a plea. That resulted in the consecutive [prison terms] offer. As this matter was proceeding toward trial and hearing on the motion to suppress and the other offer came [of concurrent prison terms], my understanding is that you acknowledged or were willing to acknowledge what you did; and you did that in open court on the record in terms of setting fire to the sheet in the linen closet. Those were your own statements, and I don't recall Mr. Cooper or I ever suggesting any such factual statements to you.

Cooper did not recall Rochell stating that a guilty plea would be untruthful. Cooper denied telling Rochell that the court "wouldn't care this time."

¶17. Cooper admitted that, throughout the case, he advised Rochell that a guilty plea would "beat the death penalty", and that Rochell would be eligible for parole in 8 years. Cooper believed that a guilty plea was the only "sure way" to avoid the death penalty, but did not remember making such a statement to Rochell There were a number of motions pending at the time the plea was entered, including the motion to suppress. Hill told Rochell that Judge Coleman was a very conservative judge "and in all likelihood . . . would not sustain [the] motion to suppress."

¶18. Hill denied the allegations in the affidavits. Hill knew that he and Cooper did nothing improper, in order to induce Rochell's plea. Hill also knew that Rochell did not enter the plea as a result of improper inducements. Hill could not say whether Rochell entered the plea as a result of fear. However, Hill stated:

> I know there's an allegation here that Barbara McMahan and Teresa Broughman, who I presume are relatives of yours [Rochell], say that Mr. Cooper and I encouraged you to lie under oath as to whether or not you did these things that you were accused of doing. I mean that just makes no sense. With that fact scenario I would have simply told you to consider an Alford versus North Carolina plea, which the Court is aware of; and it's perfectly legal to enter a guilty plea at the same time you maintain your innocence under a certain proceeding before the Court. It makes no sense for Mr. Cooper and I to suborn your perjury. I mean that's just crazy.

¶19. Cooper did not remember asking Rochell if the fire was unintentional, or Rochell stating that the fire was unintentional. Rochell stated that he was never advised by his attorneys or the trial judge that a jury would decide his punishment. Cooper did not specifically recall telling Rochell that a jury would decide punishment. However, Cooper was "sure" that he or Hill discussed it with Rochell "at some point."

## LEGAL ANALYSIS

¶20. The standard of review after an evidentiary hearing in post-conviction relief cases is well-settled: "We will not set aside such a finding unless it is clearly erroneous. Put otherwise, we will not vacate such a finding unless, although there is evidence to support it, we are on the entire evidence left with the definite and firm conviction that a mistake has been made." **_Reynolds v. State_**, 521 So. 2d 914, 917-18 (Miss. 1988).

> **A. Whether the Appellant's guilty plea was voluntarily, intelligently, and knowingly given per Rule 8.04 (A)(3), Uniform Rules of Circuit and Court, or the plea was induced by fear and other improper inducements?**

¶21. Rochell first argues that his plea was a result of "fear and other improper inducements". That is, Rochell claims that his attorneys "threatened and coerced him into pleading guilty so that he would not have to face the death sentence." However, there is substantial evidence to indicate that the attorneys did not force or

improperly induce Rochell.

¶22. The attorneys denied that they told Rochell to lie under oath. They also denied that they forced or improperly induced Rochell to plead guilty in any way. In fact, even Rochell's family members admitted that the attorneys did not force him to plead guilty. Therefore, the trial judge did not abuse his discretion in denying Rochell's claim for post-conviction relief.

> The trial judge saw these witnesses testify. Not only did he have the benefit of their words, he alone among the judiciary observed their manner and demeanor. He was there on the scene. He smelled the smoke of battle. He sensed the interpersonal dynamics between the lawyers and the witnesses and himself. These are indispensable.

*Madden v. Rhodes*, 626 So. 2d 608, 625 (Miss. 1993) (quoting *Culbreath v. Johnson*, 427 So. 2d 705, 708 (Miss. 1983)).

¶23. The basis of Rochell's argument is his claim of innocence. However, as the State correctly points out, "[a]dmission of guilt is not a constitutional requisite of an enforceable plea." *Templeton v. State*, 725 So. 2d 764, 766 (Miss. 1998) (quoting *Corley v. State*, 585 So. 2d 765, 767 (Miss. 1991) and *Reynolds*, 521 So. 2d at 917). *See also North Carolina v. Alford*, 400 U.S. 25, 38-39 (1970) (where the Court upheld plea, which was supported by evidence from three witnesses, even though the accused protested his innocence). Furthermore, as Attorney Hill pointed out at the evidentiary hearing, if Rochell had proclaimed his innocence at the time of the plea, appropriate steps could have been taken to enter the plea. Thus, the attorneys had nothing to gain and a great deal to lose, if they had suborned perjury in the manner alleged by Rochell.

¶24. Regardless, the attorneys have denied Rochell's allegations. The testimony of Rochell's family supports, in part, the testimony of the attorneys. The trial judge found the attorneys' denials to be credible. Since this Court does not have "the definite and firm conviction that a mistake has been made", this assignment of error is without merit. *See Reynolds*, 521 So. 2d at 917-18*.

### B. Whether the trial judge abused his discretion in erroneously shifting the burden of proof to the State in violation of Miss. Code Ann. § 99-39-21 (6) and § 99-39-23 (7)?

¶25. Rochell next argues that the trial judge abused his discretion in allowing the State to present its witnesses first. Rochell raised no objections in this regard at the hearing, however, and consideration of this issue is therefore procedurally barred. *See Berry v. State*, 703 So. 2d 269, 276 (Miss. 1997). Even if this Court were to consider the merits of the issue, however, Rochell's argument would fail.

¶26. It is true that, "[o]n remand for an evidentiary hearing, [the appellant] was required to show by a preponderance of the evidence that he was entitled to relief." *Billiot v. State*, 655 So. 2d 1, 12 (Miss. 1995) (citing Miss. Code Ann. § 99-39-23(7) (Supp.1993)). However, Rochell's argument is specious. Although Rochell alleges that his cross-examination of State's witnesses was somehow restricted by the procedure employed at the evidentiary hearing -- it is difficult to imagine what possible prejudice Rochell suffered from the trial judge's statement that "[a]pparently the burden of going forward with the proof rests upon the State; so we will proceed in that manner . . .". It is also difficult to imagine what possible new or different evidence could be adduced -- if this case were remanded for a hearing in which Rochell presented his witnesses first. Therefore, the error in the procedure, if any, is harmless. *See generally Williams v.*

*State*, 583 So. 2d 620, 625 (Miss. 1991) (trivial errors do not require reversal).

### C. Whether the trial judge erroneously limited cross examination of State witnesses, in violation of Rule 611(b), Rules of Evidence, which seriously denied the Appellant a fair hearing and caused prejudice?

¶27. Rochell claims that the trial judge erred by limiting cross-examination of the State's witnesses, attorneys Hill and Cooper. Mississippi Rule of Evidence 611(b) provides that "[c]ross-examination shall not be limited to the subject matter of the direct examination and matters affecting the credibility of the witness."

¶28. Specifically, Rochell cites three exchanges in the record and argues that the State's witnesses should have been allowed to respond to the questions on cross-examination. He argues that the trial court violated M.R.E. 611(b), by sustaining the State's objections to the following questions:

Q. [BY ROCHELL]: In my specific case if over the course of the 619 days between date of arrest and the plea agreement, if a chain of events had led me to believe that I could not get a fair trial in this court because the judge was an ex-district attorney, he was not going to suppress a statement; that the State, once the statement was not suppressed, was going to withdraw plea agreements; and I would, indeed, get the death penalty at trial, would that plea be voluntarily entered?

A. [BY ATTORNEY COOPER]: Probably not, but that's not what I recall happening.

BY [ASSISTANT DISTRICT ATTORNEY] STALLINGS: Your Honor, we're going to object to that type question. It's hypothetical. I mean it's not proper.

BY THE COURT: Yes, sir. The motion will be sustained unless you can lay a proper predicate for it, yes, sir.

Later in the cross-examination of Cooper, the following exchange occurred:

Q. [BY ROCHELL]: As you stated earlier that you probably did, in fact, tell me that the only sure way to beat the death sentence was to plead guilty, if I thought that, as I had been told, that Judge Coleman was not going to suppress the statement, and that the only sure way to keep from getting the death sentence was to plead guilty, me thinking that I could not get a fair trial, that would possibly be an unfair inducement, couldn't it?

BY MR. STALLINGS: Your Honor, again, I object. He's asking for a hypothetical. He's asking him to assume things that only Mr. Rochell would know. Mr. Rochell is not testifying. I would object.

BY MR. ROCHELL: I withdraw the question.

BY THE COURT: All right.

¶29. Furthermore, during Rochell's cross-examination of Hill, the following exchange took place:

Q. [BY ROCHELL]: There is a lot more pressure on the defendant, per se, in a capital case than in a regular criminal case, is it not?

A. [BY ATTORNEY HILL]: A lot more pressure on everybody.

Q. And what a capital defendant believes with his life being on the line --

BY MR. STALLINGS: Excuse me, Mr. Rochell. Judge, I object to these abstract questions.

BY THE COURT: Mr. Rochell, I know you're not an attorney; but you're very accomplished in this area. You must lay a predicate, proper foundation, before your question, yes, sir.

BY MR. ROCHELL: All right, your Honor.

¶30. "The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." *Johnston v. State*, 567 So.2d 237, 238 (Miss.1990). The discretion of the trial judge, however, must be exercised within the boundaries of the Mississippi Rules of Evidence. *Johnston*, 567 So.2d at 238. See M.R.E. 103(a), 104(a).

> M.R.E. 611(b) allows wide-open cross-examination so long as the matter probed is relevant. M.R.E. 611(b), Comment; *State Highway Com'n of Miss. v. Havard*, 508 So.2d 1099, 1102 (Miss.1987). A judge may limit cross-examination to serve one of the purposes stated in M.R.E. 611(a), to wit: to make the examination effective for ascertaining the truth, to avoid waste of time, and to protect witnesses from harassment or undue embarrassment. M.R.E. 611(b), Comment; M.R.E. 611(a).

*Johnston v. State*, 618 So. 2d 90, 93 (Miss. 1993).

¶31. The trial judge did not preclude Rochell from asking these questions altogether, rather Rochell was asked to establish a proper predicate for the questions. Furthermore, the questions do not appear to be relevant to this case. Therefore, the trial judge did not abuse his discretion in sustaining the State's objection, and this point of error is without merit.

### D. Whether the trial judge abused his discretion in allowing a key State witness to remain after the rule had been invoked which denied due process and tainted future testimony?

¶32. Rochell further claims that, after having testified, attorney Cooper was allowed to sit at the "District Attorney's table" while attorney David Hill was testifying. Rochell contends that "there was silent communication between" Hill and Cooper "on several occasion[s]", while Hill testified. As a result, Rochell claims that he was prejudiced.

¶33. The record reflects that Rochell invoked the rule at the beginning of the hearing. The trial judge then excused the witnesses from the courtroom. Attorney Cooper was the first witness, and after Cooper's testimony, the following exchange occurred:

BY MR. ROCHELL: I have nothing further, your Honor.

BY THE COURT: All right? anything else on redirect?

BY [ASSISTANT DISTRICT ATTORNEY] STALLINGS: No, your Honor.

BY THE COURT: May this witness be permanently excused?

BY MR. STALLINGS: Yes, sir.

BY THE COURT: Mr. Cooper, you may step down. You may leave or stay with us.

BY THE WITNESS: Thank you, your Honor.

It should first be noted that Rochell made no objection to Cooper's remaining in the courtroom. Therefore, this issue is procedurally barred, based on the lack of a contemporaneous objection. *See Berry*, 703 So. 2d at 276. However, even if this Court were to consider the merits of the issue, Rochell's argument would fail.

¶34. Mississippi Rule of Evidence 615 provides as follows:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

M.R.E. 615.

¶35. The purpose of the rule is "to avoid witnesses 'tailoring' their testimony to fit testimony that has gone before."*Douglas v. State*, 525 So. 2d 1312, 1317 (Miss. 1988). Therefore, it would seem that once a witness has been finally excused, he is no longer a "witness" for purposes of the rule.

¶36. Indeed, the cases on this issue all deal with witnesses who testify after being present in the courtroom or learning of what happened in the courtroom during the testimony of other witnesses. The fact that no reversible error exists in this context is also evident from the "basic remedies for a rule 615 violation" established by this Court:

Once a witness has violated the rule, however, the remedy lies within the court's discretion. Remedies may include prospectively excluding the witness where prejudice will otherwise ensue; striking the witness's testimony where connivance gave rise to the testimony; striking the witness's testimony where the testimony gave rise to prejudice; or, most appropriately, allowing the other party to subject the witness to a "full-bore cross-examination" on the facts of the rule violation.

*Hughes v. State*, 735 So. 2d 238, 258-59 (Miss. 1999) (quoting *Brown v. State*, 682 So.2d 340, 349 (Miss.1996) and *Douglas*, 525 So.2d at 1317).

¶37. That is, there is no precedent for applying the rule to this situation. It should also be noted that there is nothing in the record to indicate that Cooper remained in the courtroom -- much less that he sent "silent communication" to Hill. It is difficult to believe that any trial judge, much less an experienced one such as Judge Lackey, would allow any such improper behavior in the courtroom. Moreover, Rochell did not bring this alleged "silent communication" to the trial judge's attention or raise any objection thereto. In short, there is nothing in the record to support Rochell's allegation.

" '[T]his Court will not consider matters which do not appear in the record and must confine itself to what actually does appear in the record.' " *Medina v. State*, 688 So.2d 727, 732 (Miss.1996) (quoting *Robinson v. State*, 662 So.2d 1100, 1104 (Miss.1995)). Further, we "cannot decide an issue based on assertions in the briefs alone; rather, issues must be proven by the record." *Medina*,

688 So.2d at 732. The issue, therefore, is not properly before this Court.

*Rushing v. State*, 711 So. 2d 450, 454 (Miss. 1998).

¶38. Finally, even assuming that some violation of the rule had occurred, "this Court held that, '[w]hen [a] violation of the sequestration rule is assigned as error on appeal, the failure of the judge to order a mistrial or to exclude testimony will not justify reversal on appeal ... absent a showing of prejudice sufficient to constitute an abuse of discretion.'" **Brown**, 682 So. 2d at 349 (quoting **Douglas**, 525 So. 2d at 1318). The record indicates no such prejudice, and this point of error is without merit.

### E. Whether the trial judge prejudiced the Appellant's case by not entertaining a Writ of Habeas Corpus which forced the Appellant to conduct the hearing without discovery as requested per Miss. Code Ann. § 99-39-15 and § 99-39-23 (2)?

¶39. Rochell claims that he filed for a "writ of habeas corpus ad testificandum" with the trial court on February 19, 1998. Apparently that filing was not made a part of the record on appeal. However, Rochell argues that he was seeking to be moved from the Holly Springs facility to the Calhoun County Jail, in order to better conduct an investigation and prepare for the evidentiary hearing. Rochell does not specify the exact subject of the proposed investigation.

¶40. The record reflects that Rochell later sought a writ of mandamus from this Court to compel the trial court to transport him from the Holly Springs facility to the Calhoun County Jail. On October 9, 1998, this Court (via an order executed by Justice Mills), denied the motion for writ of mandamus, and found that "[Rochell's] request, though now moot, was also without merit." The State very logically argues that, pursuant to the doctrine of *res judicata*, this Court's prior ruling on the issue precludes its consideration now.

¶41. Furthermore, Rochell's argument on this point is extremely vague and difficult to analyze. Of course, from Rochell's standpoint, being in the local jail and near his family may have been preferable. However, it is inconceivable that his physical location could have had any impact on the evidentiary hearing *sub judice*.

¶42. Furthermore, the two statutes cited by Rochell appear to have no applicability to his physical location.[2] Moreover, Rochell does not specify what witnesses he wanted to interview or what investigation he wanted to make. It is difficult to see how he could have been prejudiced or denied access to any information, given the very narrow scope of the evidentiary hearing *sub judice*. That is, the legal issue to be addressed was the voluntariness of Rochell's plea. By necessity, Rochell would have been a party to anything bearing on that issue. Furthermore, the only other possible witnesses in this case were Rochell's family members and the trial lawyers. There is nothing to indicate that Rochell was denied access to these witnesses. For all these reasons, Rochell's argument on this point is without merit.

### CONCLUSION

¶43. The points of error raised by Rochell are without merit, and the trial court's denial of post-conviction relief is affirmed.

¶44. **AFFIRMED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH, MILLS,**

# WALLER AND COBB, JJ., CONCUR.

1. Rochell alleged that he lied at the plea hearing, when admitted guilt, and when he stated that he had not been threatened or coerced. Specifically, Rochell contended that his attorneys instructed him to plead guilty, in order to avoid the death penalty. Rochell claimed that he told the attorneys that such a plea would be untruthful; however, the attorneys told Rochell that the court would not care, and that Rochell would not be subject to perjury charges. Rochell's claims were supported by the affidavits of his mother and his sister.

2. Miss Code Ann. § 99-39-15 provides that:

> (1) A party may invoke the processes of discovery available under the Mississippi Rules of Civil Procedure or elsewhere in the usages and principles of law if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

> (2) Requests for discovery shall be accomplished by a statement of the interrogatories or requests for admission and a list of the documents, if any, sought to be produced.

Miss. Code Ann. § 99-39-15 (1994). There is nothing in the record to indicate that Rochell demonstrated good cause to conduct discovery or that the trial judge denied him the opportunity to do so. Rochell also cites Miss Code Ann. § 99-39-23(2), which provides as follows:

> (2) The hearing shall be conducted as promptly as practicable, having regard for the need of counsel for both parties for adequate time for investigation and preparation.

Miss Code Ann. § 99-39-23 (2) (Supp. 1999). There is nothing in the record to indicate that this statute was violated.