CARLTON, J„ for the Court:
¶ 1. Daniel F. Barber Jr. was convicted of murder and sentenced to life in the custody of the Mississippi Department of Corrections (MDOC). On appeal, Barber argues a new trial is warranted because (1) the prosecutor presented evidence of crimes not before the jury; (2) a police officer, who was not an expert on ballistics, was allowed to testify about bullet trajectory; (3) the verdict was against the weight of the evidence; (4) the trial court abused its discretion in admitting or excluding certain evidence; (5) the prosecutor asked leading questions meant to elicit inadmissible or false testimony; and (6) his trial and appellate counsel were ineffective.[1] Finding no error, we affirm.
FACTS
¶2. On December 20, 2007, the Pearl Police Department responded to reports of gunfire on Boston Road in Pearl, Mississippi. When officers arrived, Patrick Spears, Barber’s cousin, was found lying in the road, with gunshot wounds to his face and chest. Spears was transported to the hospital, where he died. Police searched Spears’s pockets, looking for identification. None was found, but a straw and a small bag filled with a cocaine-like substance were discovered. Police detained two witnesses: Jonathan Hopson and his girlfriend, Aisha Walker, both seventeen years old.
¶ 3. Hopson testified that he and Walker had asked Spears for a ride from Pearl to Jackson, Mississippi, the day of the murder. Spears agreed, but said he first needed to go “through Pearson,” which is also in Pearl. Spears drove a short distance to Boston Road, where the three encountered Barber walking in the road. Spears, Hopson, and Barber are cousins, but Hopson and Barber had not expected to see Spears that day. Hopson testified that Barber waived them down in the road, and Spears stopped the car. When Barber approached the driver’s side window, Barber quietly looked into the car, then hit Spears in the face. Spears got out of the car, and Walker, who was sitting in the back seat, followed in an attempt to discourage Spears and Barber from fighting. Hopson testified that he had known Barber all his life, and Barber’s behavior was *590 not “normal,” but rather it seemed “like he was on something.” Walker also noticed that Barber “had a crazy look on his face.” Walker testified that after Spears exited the car, Barber immediately “pulled a gun out and shot [Spears] like four or five times.” When the first gunshot rang out, Hopson, who was still sitting in the front passenger seat of the car, jumped behind the wheel and drove away. Hopson testified he fled out of fear that Barber would shoot him next. Hopson drove around the block and returned within a few minutes. Walker remained at the scene, where she and a neighbor contacted police. Both Walker and Hopson testified that Spears was unarmed, and police found no weapon at the crime scene.
¶4. Barber gave a different version of the events surrounding the shooting. According to Barber, Spears drove up to him, yelling obscenities from the car window. Spears then stopped the car and told Barber to come closer. When Barber approached the car, Spears reached out the window and shoved him. Barber shoved back, then took “three or four steps” away from the car. According to Barber, Spears exited the car and kept “attacking [him,] talking about he gotta gun and drawing in his pocket.” Believing Spears was going to kill him, Barber drew his gun, closed his eyes, and began shooting. Spears fell to the ground and dropped his gun. As Spears reached for the gun, Barber shot him again to prevent Spears from firing at him as he walked away. Barber then left the scene.
¶ 5. Barber was found later that day in Jackson and arrested. When asked why he fled the scene, Barber explained that he was afraid of being arrested, even though he had shot Spears in self-defense.
¶ 6. Barber was indicted for Spears’s murder and found guilty by a jury in the Rankin County Circuit Court. He was sentenced to life in the custody of the MDOC. Barber filed a motion for a judgment notwithstanding the verdict or new trial, which the trial court denied. Barber now appeals.
DISCUSSION
I. Evidence of Other Crimes
¶ 7. Barber argues he is entitled to a new trial because the State impermis-sibly presented evidence of three uncharged crimes that occurred in relation to Barber’s arrest for murder. “[T]he admission of evidence is within the discretion of the trial court, and courts have been instructed to construe the Mississippi Rules of Evidence in favor of admission.” Ross v. State, 954 So.2d 968, 995 (¶ 51) (Miss.2007). “[R]eversal is appropriate only when a trial court commits an abuse of discretion resulting in prejudice to the accused.” Id. at 992 (¶ 44).
¶ 8. After the murder, Barber went to Jackson, where he knocked on a female’s door and asked to use her phone to call for a ride. The homeowner said no, and an argument ensued. Officer Michael Mooney with the Jackson Police Department responded to the disturbance. Officer Mooney asked Barber for identification. Barber stated that he did not have any identification with him, but that his name was “Chris Moore.” While waiting for dispatch to run the Social Security number given to him by Barber, Officer Mooney frisked him for weapons. Despite Barber’s insistence that he was unarmed, Officer Mooney found a loaded revolver, five bullets, and five spent shell casings. At this point, dispatch returned the information matching the' Social Security number given, and it did not belong to Barber. Officer Mooney then questioned the homeowner, who identified Barber and stated that Barber was from Pearl. Officer Moo *591 ney contacted the Pearl Police Department and learned that Barber was wanted for Spears’s murder. Barber was turned over to the custody of the Pearl Police Department.
¶ 9. Barber argues that any evidence of the alleged uncharged offenses— false pretense for lying about his name and identity, unlawful possession of a concealed weapon, and possession of a stolen firearm—was inadmissible bad-act testimony and was unfairly prejudicial. Mississippi Rule of Evidence 404(b) states:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
While evidence of other crimes or bad acts is not usually admissible, an exception exists “where [the evidence] is necessary to show identity, knowledge, intent, [or] motive[;] or to prove scienter.” Simmons v. State, 813 So.2d 710, 716 (¶ 30) (Miss.2002). Another exception exists where the evidence is necessary “to tell the complete story so as not to confuse the jury.” Id.
¶ 10. Officer Mooney’s testimony was not admitted to prove that Barber committed other crimes the day of the murder, or that Barber possessed a propensity toward criminal activity. Rather, the testimony was admitted to tell the jury a complete story as to how Barber was taken into the State’s custody; where Barber went after the murder; and his state of mind when he was arrested. Officer Mooney’s testimony revealed that Barber fled to Jackson from Pearl after shooting Spears; Barber possessed a weapon that matched the type used to kill Spears when law enforcement encountered him in Jackson the same day; he possessed bullets and shell casings that matched those found at the crime scene; and he appeared “nervous” and lied about his identity when approached by law enforcement in Jackson on the day of the shooting in Pearl. Therefore, Officer Mooney’s testimony did not violate Rule 404(b), and the testimony was admissible for other relevant purposes. See Simmons, 813 So.2d at 716 (¶ 30).
¶ 11. In addition, the evidence was more probative than prejudicial under Mississippi Rule of Evidence 403.[2] Barber argues that Officer Mooney’s testimony was highly prejudicial because its only purpose was to show Barber was a criminal, and that the testimony had “minimal” probative value since Barber admitted he shot Spears. We disagree. We find the probative value of giving the jury a complete account of Barber’s arrest outweighed any unfair prejudice. Therefore, the testimony was properly admitted.
II. Ballistic Evidence
¶ 12. Barber argues that Sergeant Jerry Adair, an investigator with the Pearl Police Department, was not qualified under Mississippi Rule of Evidence 702 to testify about the significance of bullet-impact marks found at the crime scene, and that the admission of his testimony was reversible error.
¶ 13. Rule 702 states:
If scientific, technical, or other specialized knowledge will assist the trier of *592 fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
¶ 14. At trial, Sergeant Adair gave his opinion as to his personal observations of the bullet-impact marks at the crime scene. As to State Exhibit 14, a photograph taken by Sergeant Adair of an impact mark, he testified: “From my experience ... as a firearms instructor^] it looked as if someone was holding a weapon, if not pointed directly down, but close[,] at an angle and fired directly down to make this impact into the asphalt.” As to State Exhibit 16, a photograph taken by Sergeant Adair of “an expended piece of ball ammunition,” he testified that “like the other one ... the weapon had to be fired....” At this point an objection was made to Sergeant Adair’s qualifications. The objection was sustained, and a voir dire examination was conducted. Sergeant Adair testified that he had received firearms training, but he was not a certified expert. The State then clarified that it was not seeking to present expert-witness testimony under Rule 702, but rather lay-witness testimony under Mississippi Rule of Evidence 701. The objection was overruled.
¶ 15. Rule 701 states:
If the witness is not testifying as an expert, the witness’s testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.
¶ 16. Sergeant Adair’s testimony was “not based on scientific, technical, or other specialized knowledge.” Id. He simply gave his opinion based upon his personal observations of the scene as to where the bullets appeared to have impacted the ground and where he recovered the shell casings. This testimony required no expert certification. Sergeant Adair’s testimony was “rationally based on [his] perception[s]” at the crime scene and was “helpful to the clear understanding of the testimony or the determination of a fact in issue.” Id.
¶ 17. Since “[t]he relevancy and admissibility of evidence are largely within the discretion of the trial court,” the trial court’s decision will only be reversed “where that discretion has been abused.” Johnston v. State, 567 So.2d 287, 238 (Miss.1990). The record supports the trial court’s ruling that Sergeant Adair simply gave his personal observations of the crime scene. We find no abuse of discretion by the trial court in finding that Sergeant Adair’s testimony was admissible under Rule 701. This issue is without merit.
III. Weight of the Evidence
¶ 18. In his pro se brief, Barber argues the verdict was against the weight of the evidence because of the conflicting testimonies at trial. He argues the jury should have found him not guilty based on self-defense, or, at the most, found him guilty of manslaughter.
¶ 19. When reviewing a challenge to the weight of the evidence, an appellate court “will only disturb a [jury’s] verdict when it is so contrary to the overwhelming weight of the evidence that to *593 allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). “[T]he evidence should be weighed in the light most favorable to the verdict.” Id.
¶ 20. Barber contends that on the day of the murder, he was walking in his neighborhood when Spears, who was “high on alcohol and cocaine,” “came looking for him.” Barber claims he shot Spears in self-defense after Spears threatened him with a gun. Barber asserts that he was not under the influence of drugs or alcohol at the time. To the contrary, Hopson and Walker testified that Barber was the aggressor and appeared to be “on something.” Also, neither Walker nor Hopson saw Spears with a gun, and no gun was found at the crime scene. Barber counters that no gun was found because Hop-son disposed of it when he fled the scene and drove around the block. Barber also asserts that law enforcement failed to search the area where Hopson drove. However, Barber’s own testimony contradicts this theory, since Barber testified that he saw Spears’s gun on the ground after Hopson drove away. Alternatively, Barber contends that regardless of whether or not Spears possessed a gun, Spears represented to Barber that he possessed a gun, and Barber had the right to defend himself.
¶ 21. “[Wjhere the verdict turns on the credibility of conflicting testimony and the credibility of the witnesses, it is the jury’s duty to resolve the conflict.” Brown v. State, 995 So.2d 698, 702 (¶ 13) (Miss.2008) (quoting Nicholson v. State, 523 So.2d 68, 71 (Miss.1988)). The jury chose to resolve the conflicting evidence in favor of the State. Taking the evidence in the light most favorable to the verdict, we cannot find the jury’s verdict was against the weight of the evidence, or that allowing it to stand would “sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). This issue is without merit.
IV. Admission and Exclusion of Evidence
¶ 22. In this assignment of error, Barber, pro se, argues that the trial judge erred in admitting or excluding certain evidence.[3] “A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the [appellate court] will not reverse this ruling.” Hargett v. State, 62 So.3d 950, 952-53 (¶7) (Miss.2011) (quoting Price v. State, 898 So.2d 641, 653 (¶29) (Miss.2005)).
¶ 23. First, Barber argues the trial court erred in excluding one of his witnesses, Sheryl Mitchell, who would have testified as to Spears’s violent tendencies while under the influence of cocaine and/or alcohol. A review of Barber’s proffer of Mitchell’s testimony shows a lack of foundation for its admission into evidence. Although usually irrelevant, evidence of a victim’s character may be admissible “where the defendant claims that the victim was the initial aggressor and that the defendant’s actions were in the nature of self-defense.” M.R.E. 404(a) cmt. Mitchell’s knowledge of Spears’s character while using cocaine and/or alcohol was not relevant to show Barber’s knowledge of such, because no evidence in the record lays the foundation that Barber possessed such *594 knowledge or belief. Mitchell’s proffered testimony asserted her knowledge and belief, but did not indicate she told Barber her belief about Spears’s tendencies toward violence. Further, Barber testified and provided no evidence that he believed Spears to be violent while using cocaine or alcohol. “In order to admit evidence of the violent character of [the] deceased as bearing on the apprehension of danger by the accused, it must appear to have been known to him.... ” Freeman v. State, 204 So.2d 842, 844 (Miss.1967). Mitchell’s proffered testimony lacked a sufficient evidentiary foundation for admission since the proffered testimony failed to show Barber believed Spears to be violent when using cocaine or alcohol. The record therefore shows no error or abuse of discretion by the trial court’s finding Barber failed to provide a sufficient evidentiary foundation to allow the proffered testimony by Mitchell regarding the victim’s character. Our standard of review of the trial court’s admission or exclusion of evidence is abuse of discretion, and we find that the record shows no abuse of discretion by the trial court in excluding Mitchell as a witness. See Hargett, 62 So.Sd at 952-53 (¶ 7).
¶ 24. Second, Barber argues the trial court erred in allowing into evidence a photograph of a bullet on the sidewalk in front of Barber’s home. Barber asserts that any evidence regarding the bullet was irrelevant since it had no connection to the crime. No testimony was given regarding the bullet other than its location. We find the trial court did not abuse its discretion in overruling Barber’s objection at trial. The photograph was taken as part of the investigatory process, and Barber has made no argument that the photograph prejudiced his defense.
¶ 25. Third, Barber argues that the State was allowed to shift the burden of proof by asking a witness if the defense had requested a gunshot-residue test on Spears. Forensic expert David Whitehead of the Mississippi Crime Laboratory testified that he “did not test the victim’s [gunshot-residue] kit” because “[t]here was not a request made for that analysis.” On cross-examination, Barber’s counsel asked questions suggesting that the police should have requested a gun-shot-residue test. On redirect examination, the State sought to clarify whether the defense had requested the test. Whitehead stated that they had not. As Whitehead had already stated no request was made from either side, there was no harm in the State asking this question. This issue is without merit.
¶ 26. Fourth, Barber asserts the trial court abused its discretion in allowing Dr. Steven Hayne to testify as an expert in forensic pathology. In Edmonds v. State, 955 So.2d 787, 792 (¶ 8) (Miss.2007), the Mississippi Supreme Court held that “Dr. Hayne is qualified to proffer expert opinions in forensic pathology[.]” Barber does not assert any specific error in Dr. Hayne’s findings. Thus, this argument is without merit.
¶ 27. Finally, Barber asserts the trial court allowed the State to introduce an expert report that was not provided to him in discovery. The report, which was prepared by Steve Byrd of the Mississippi Crime Laboratory, compared spent shell casings found at the crime scene to those from a test fire done at the crime lab. A dispute arose at trial over whether the defense had received the report. Barber’s counsel was given an opportunity to review the report. The judge then asked: “Does it prejudice your case in any way? Do you need a continuance so that you can examine this report?” Barber’s counsel replied, “No, your Honor.” Thus, even if the State failed to submit the report in discovery, Barber’s counsel was allowed to review the *595 report, and the judge offered a continuance, which met the requirements of Uniform Rule of Circuit and County Court 9.04(1). This issue is without merit.
V. Prosecutorial Misconduct
¶ 28. Barber, pro se, argues that the prosecutor: asked leading questions meant to elicit hearsay testimony and pri- or-bad-act testimony; vouched for the credibility of a State witness; allowed Dr. Hayne to testify, knowing that he was unqualified; and “badgered” and attempted to confuse Barber during cross-examination. No objection was made to any of Barber’s alleged errors; therefore, his arguments are procedurally barred. See Johnson v. State, 44 So.3d 365, 366 (¶ 6) (Miss.2010) (“It is well-established that failure to raise an issue at trial procedurally bars review on appeal.”). Despite the procedural bar, this Court has reviewed the record and found no merit to Barber’s assertion of prosecutorial misconduct. This issue is without merit.
VI. Ineffective Assistance of Trial and Appellate Counsel
¶ 29. Barber asserts his trial and appellate attorneys were ineffective. To prove ineffective assistance of counsel, Barber must show that (1) his “counsel’s performance was deficient,” and (2) “the deficient performance prejudiced [his] defense.” Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). “[T]here is a strong presumption that counsel’s performance falls within the range of reasonable professional assistance.” Willis v. State, 66 So.3d 740, 745 (¶ 21) (Miss.Ct.App.2011) (citing Strickland, 466 U.S. at 689, 104 S.Ct. 2052). Barber is raising his ineffective-assistanee-of-counsel claim on direct appeal, rather than though a post-conviction-relief motion. Therefore, this Court may only consider the merits if “(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.” Wilcher v. State, 863 So.2d 776, 825 (¶ 171) (Miss.2003).
¶ 30. Barber argues his trial counsel failed to file a suppression motion based on an illegal search and seizure; failed to cross-examine the arresting officer on the illegal search and seizure; failed to interview certain potential witnesses; failed to make certain objections; and failed to question the trial court’s sentence pronouncement. These decisions were matters of trial strategy, which do “not generally amount to ineffective assistance of counsel.” Rogers v. State, 85 So.3d 293, 297 (¶ 16) (Miss.2012). Barber has not shown any “ineffectiveness of constitutional dimensions,” and the parties have not stipulated that the record is adequate for this Court’s review. Wilcher, 863 So.2d at 825 (¶ 171). Therefore, we find no merit to this argument.
¶ 31. Barber’s argument regarding his appellate counsel’s failure to adequately review the record and identify certain issues is not appropriate for direct appeal. Because “[t]he standard of acceptable performance by an attorney is the same for appellate performance as it is for trial performance,” Barber “must show both professional error and resulting ’prejudice.” Williams v. State, 722 So.2d 447, 450-51 (¶ 12) (Miss.1998) (emphasis added). It is impossible for Barber to show resulting prejudice before knowing the outcome of his appeal. Thus, we will not address this argument.
¶ 32. The judgment of the trial court is affirmed.
*596 ¶ 33. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. BARNES AND JAMES, JJ, CONCUR IN PART AND IN THE RESULT.

. The Office of the State Public Defender, Indigent Appeals Division, has filed a brief on Barber’s behalf, raising issues one and two. The remaining issues are raised by Barber, proceeding pro se. Mississippi Rule of Appellate Procedure 28(b) allows a criminal appellant to file a pro se supplemental brief to address "issues not raised by counsel.” The brief must conform with our rules of appellate procedure, and must be based on the record. Id. Rule 28(b) is based on Article 3, Section 26 of the Mississippi Constitution, which states that “[i]n all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both[.]” To the extent Barber's pro se arguments overlap with those of counsel, they have been combined.

. Mississippi Rule of Evidence 403 states that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.”

. Also under this assignment of error, Barber argues that the trial court's oral pronouncement sentencing him to "life” is in conflict with MDOC records, which reflect a sentence of life "without the benefit of parole.” This issue is not appropriate for direct appeal, but is better suited for an administrative proceeding through the MDOC or a post-conviction-relief motion.